[No. D051079. Fourth Dist., Div. One. Dec. 28, 2007.]

In re ANTONIO G. et al., Persons Coming Under the Juvenile Court Law.

SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v.
SHEENA G. et al., Defendants and Appellants.

## COUNSEL

Linda M. Fabian, under appointment by the Court of Appeal, for Defendant and Appellant Sheena G.

Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Defendant and Appellant Nina G.

John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Katharine R. Bird, Deputy County Counsel, for Plaintiff and Respondent.

Andrea St. Julian, under appointment by the Court of Appeal, for Minors.

## OPINION

**NARES, Acting P. J.**—Sheena G., the maternal grandmother of Antonio G. and Shakira G., appeals orders denying her request to have the children placed with her. Sheena contends the San Diego County Health and Human Services Agency (Agency) violated her rights under Welfare and Institutions Code[1] section 361.3 by not evaluating her as a placement option, and the juvenile court erred because it did not apply the relative preference placement

---

[1] All statutory references are to Welfare and Institutions Code unless otherwise specified.

criteria under the statute. Sheena also contends she met the statutory requirements of section 388 and, therefore, the court erred by denying her section 388 petition. Nina G., the children's mother, also appeals and joins Sheena's argument. (Cal. Rules of Court, rule 8.200.)

## FACTS

In May 2005 the Agency took Antonio, then seven years old, and Shakira, then three years old, into protective custody because they were exposed to domestic violence between Nina and her boyfriend Elijah. Elijah also had molested the children's 13-year-old sibling; when Nina learned of the molestation, she slapped the older sibling. Agency filed dependency petitions on behalf of Antonio and Shakira under section 300, subdivisions (b) and (j). The court detained the children with Sheena in June and formally placed them with her in July. The court ordered supervised visits for Nina.

At the six-month review hearing in December the social worker reported Antonio and Shakira were doing well in Sheena's care. The court ordered Nina's services to continue after finding she made only minimal progress.

In May 2006 Agency removed Antonio and Shakira from Sheena's home and filed a section 387 petition alleging that Sheena had allowed Nina to have unsupervised visits with the children and had left them unsupervised in the home. The petition also alleged Sheena's home could no longer be approved because of licensing requirement violations. Antonio reportedly had said he visited Nina every night but did not stay overnight with her. Shakira said she slept with Nina and Antonio at Nina's house and Sheena was not present. Antonio said sometimes when he returned to Sheena's home after school the door was locked and he would wait for her to come home. Antonio related that once when no one came to school to pick him up, he walked to his adult sister's home; she was not there and Antonio played with friends. The school received information that Antonio was late to school because he was staying with Nina. Sheena had not purchased beds for the children as she was required to do.

The court sustained the section 387 petition. Sheena was not served with the petition and did not attend the hearing. Subsequently, the court placed Antonio and Shakira with Michelle H., a nonrelative extended family member, who was Shakira's daycare provider.

In November 2006 Sheena filed a request for de facto parent status and also indicated she was willing to be appointed the legal guardian of Antonio and Shakira. The court denied Sheena's request for de facto parent status.

At the 18-month review hearing in January 2007 the court terminated Nina's reunification services and set a section 366.26 hearing.

In April, Agency filed a second section 387 motion after the children's caretaker said she was no longer willing to continue in that role. Sheena contacted Agency and asked if Antonio and Shakira could be placed with her. The social worker responded that it was not possible because the children had been removed from her earlier for allowing unsupervised contact between the children and Nina.

Sheena filed a section 388 petition, in propria persona, requesting placement of the children with her. The court ordered Agency to facilitate visits between Sheena and the children. Nina also filed a section 388 petition seeking placement of the children with her.

Agency recommended the children be placed in foster care. Antonio and Shakira said they wanted to be placed with Nina or Sheena.

In her adoption assessment report, social worker Stefani Castro concluded that Antonio and Shakira were likely to be adopted and recommended a permanent plan of adoption for the children. Although there were no local families interested in adopting a sibling group like Antonio and Shakira, the social worker believed that an adoption agency in South Carolina, which specialized in placing African-American sibling groups, could find an adoptive home for Antonio and Shakira.

At a hearing that began on May 23 to consider Agency's section 387 petition and the section 388 petitions filed by Sheena and Nina, Antonio testified he loved his mother, wanted to live with her and wanted more visits with her. Antonio was unhappy that he and Shakira were in different foster homes. Antonio did not want to move away from California because he thought that would prevent him from being able to live with Nina or see her. His first choice was to live with Nina and his second choice was to live with Sheena. Shakira testified that she missed living with Antonio. She wanted to live with Nina, Sheena or Michelle, the daycare provider.

Sheena, who worked as a teaching assistant at Memorial Academy Charter School, presented letters from her coworkers, who reported she was responsible and dependable and rarely missed work. The letter writers also said Sheena was patient and nurturing with the students, even the most challenging ones.

Jo Pastore, Sheena's sister-in-law, who had seen Sheena interact with Antonio and Shakira on many family occasions, testified the children were

well cared for when they lived with Sheena. Sheena was a very capable parent and a kind person, Pastore said. The children would feel safe and comfortable if they were placed with Sheena.

Linda Mitchell, an Ohio resident who had known Sheena for 40 years, testified by telephone. Mitchell related that when one of Sheena's grandchildren visited her father in Ohio and was abused, Sheena immediately contacted her to pick up the grandchild and care for her until Sheena arrived in Ohio to take her back home.

Susan McPhatter, who visited Sheena about once a week when Antonio and Shakira were living with her, testified the children seemed safe and happy. McPhatter never saw Nina in Sheena's home when she visited.

Counsel stipulated that if called as a witness, Nina would testify that if the children were placed with Sheena, she would obey court orders for supervised visitation. Further, Nina would testify she was moving to Dallas, Texas and planned to return to California each week to visit.

Sheena, appearing in propria persona, told the court she loved her grandchildren and would always be there for them. She wanted to put Antonio and Shakira on the right path to making good choices, to be somebody, and to go to school. Sheena, who lived alone with her cat, did not drink alcohol or smoke cigarettes because she wanted to live longer. When Antonio and Shakira were placed with Sheena earlier, she did not know the foster parent rules. For example, when she let Antonio and Shakira stay overnight with her adult daughter, Sheena did not know it was improper because her daughter had not undergone a background check. If the children were placed with her again, Sheena would not allow Nina to come to her home unless the court approved it. If Nina tried to see the children, Sheena would call the police. She also would take the children to therapy if they needed it.

Sheena said she did not purchase beds for the children because the social workers told her Agency would provide the beds. Later, Sheena was told that Nina was going to buy beds for the children. Sheena said the children were always comfortable. Sheena bought a futon and some foldup pillow-type beds because her apartment was small and there was not space for a lot of beds.

After Antonio and Shakira were removed from her home, Sheena did not see them for almost a year except for Thanksgiving dinner. But Sheena frequently called Michelle and requested visits. Michelle said she would check with the social worker, but she did not call Sheena back. Sheena also sought visits directly through the social worker, who did not return Sheena's calls.

Social worker Lashawn White testified that when she removed Antonio and Shakira from Sheena's home, she believed Sheena could not protect the children from Nina. An adult sibling of the children told personnel at Antonio's school that the children were spending nights at Nina's home. White also was concerned by two incidents when Antonio was unsupervised after school. One time Antonio walked home from school and there was no one at home to let him in; he sat outside unsupervised for a period of time. Another time, Antonio walked to an adult sibling's home after school; no one had picked him up from school. Antonio went to a neighbor's house; the neighbor telephoned Michelle and she picked him up. White acknowledged the school was only a couple of blocks from Sheena's home. The social worker also acknowledged she had not told Sheena that Antonio could not walk home from school.

When White first visited Sheena's home, there were a lot of boxes in the living room; Sheena told White she would move the boxes into storage to make room for beds for the children. Because of a problematic neighbor, White did not return to Sheena's home after this visit. Instead, White visited the children at school and asked them where they slept. White "got the impression that they did not have beds still."

White said when Antonio and Shakira were placed with their grandmother, she explained to Sheena that Nina's visits had to be supervised and the children could not go to Nina's home.

White said after the children were removed, Sheena called only one time to set up a visit for Thanksgiving. Michelle did not tell White that Sheena had requested visits.

Adoption social worker Castro testified that she had concerns about Sheena's ability to protect the children from Nina. Castro opined that the children needed stability and a calm, peaceful, nurturing environment and was not sure that Sheena could provide this. Castro had not visited Sheena's home. The social worker related that the children's therapist believed they would benefit from being adopted and this would outweigh any harm caused by their losing relationships with Nina and her family.

Castro said Sheena had a visit with the children in May 2007 and was appropriate with them, and the children were happy to see her. However, Sheena made an inappropriate comment about the children coming home. Castro had not told Sheena that she should not discuss that subject with the children.

In rebuttal, Sheena told the court that the children were never unsupervised. When Antonio walked to his adult sister's home, Sheena was home,

waiting for him at the gate. She had recently started to let him walk to and from school. Sheena and a neighbor were looking for Antonio when Michelle called and said she had picked him up at the sibling's home.

Michelle testified that when she picked up Antonio she asked him why he had walked to his adult sister's home from school. Antonio said his sister had told him to walk to her home.

Michelle said Sheena had a strong, loving, caring relationship with the children and would do a good job of taking care of them.

The court denied Sheena's section 388 petition, finding there had not been a change of circumstances. The court found Sheena had allowed Nina to have unsupervised contact with Antonio and Shakira when the children were living with Sheena. Although Sheena loved her grandchildren very much, the court concluded she was not able to control Nina, who was very disruptive. Hence, the children would not be safe with her. The court sustained Agency's section 387 petition and ordered the children placed in a licensed foster home. The court found the children were difficult to adopt because they were a sibling group and there was no identified home. The court continued the section 366.26 hearing for 180 days to locate an adoptive placement. (§ 366.26, subd. (c)(3).) The court ordered Agency to provide Sheena supervised visits and telephone calls with the children.

## DISCUSSION

Sheena contends Agency violated section 361.3 by not investigating and evaluating her as a placement option after the children had to be removed from Michelle's care. Sheena also contends the juvenile court erred by not applying the criteria listed in section 361.3, subdivision (a) to her request that Antonio and Shakira be placed with her.[2]

■ The relative placement preference, codified in section 361.3, provides that whenever a new placement of a dependent child must be made, preferential consideration must be given to suitable relatives who request placement. (§ 361.3, subds. (a), (d).) " 'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).) Preferential consideration "does not create an evidentiary presumption in favor of a relative, but merely places the relative at the head of the line when the court is determining which placement is in the child's best interests." (*In re Sarah S.* (1996) 43 Cal.App.4th 274, 286 [50 Cal.Rptr.2d 503].)

---

[2] As a threshold matter, we find Sheena, who appeared in propria persona at the second 387 hearing, did not forfeit the section 361.3 issue by not raising it below.

"[T]he statute express[es] a command that relatives be assessed and *considered* favorably, subject to the juvenile court's consideration of the suitability of the relative's home and the best interests of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 320 [27 Cal.Rptr.2d 595, 867 P.2d 706]; see also *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1033 [111 Cal.Rptr.2d 243].) Section 361.3 promotes a preference for foster placement with relative caregivers as set forth in Family Code section 7950 and helps meet "the statutory requirement of Section 16000 of the Welfare and Institutions Code that a child live in the least restrictive and most familylike setting possible." (Stats. 2001, ch. 653, § 1.)

■ The relative placement preference statute identifies factors that the social services agency and the juvenile court must consider in determining whether placement with a particular relative who requests such placement is appropriate. (§ 361.3, subd. (a).)[3] Section 361.3, subdivision (a)(8) requires the social services agency to investigate and report on the ability of relatives seeking placement with respect to the enumerated factors.

■ Agency did not evaluate Sheena as a possible placement for the children after they were removed from Michelle's care. Agency claims it was not required to evaluate Sheena because the statute carves out an exception for "relatives who have . . . been found to be unsuitable." (§ 361.3, subd. (d).) However, a prior removal under section 387 does not necessarily constitute unsuitability. If it did, that would preclude a relative caretaker from whom a child was removed for reasons unrelated to his or her appropriateness as a caretaker—such as a temporary health infirmity—from seeking placement of the child in the future if the need arose.

---

[3] Those factors are: "(1) The best interest of the child, including special physical, psychological, educational, medical, or emotional needs. [¶] (2) The wishes of the parent, the relative, and child, if appropriate. [¶] (3) The provisions of Part 6 (commencing with Section 7950) of Division 12 of the Family Code regarding relative placement. [¶] (4) Placement of siblings and half siblings in the same home, if that placement is found to be in the best interest of each of the children as provided in Section 16002. [¶] (5) The good moral character of the relative and any other adult living in the home, including whether any individual residing in the home has a prior history of violent criminal acts or has been responsible for acts of child abuse or neglect. [¶] (6) The nature and duration of the relationship between the child and the relative, and the relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful. [¶] (7) The ability of the relative to do the following: [¶] (A) Provide a safe, secure, and stable environment for the child. [¶] (B) Exercise proper and effective care and control of the child. [¶] (C) Provide a home and the necessities of life for the child. [¶] (D) Protect the child from his or her parents. [¶] (E) Facilitate court-ordered reunification efforts with the parents. [¶] (F) Facilitate visitation with the child's other relatives. [¶] (G) Facilitate implementation of all elements of the case plan. [¶] (H) Provide legal permanence for the child if reunification fails. [¶] . . . [¶] (I) Arrange for appropriate and safe child care, as necessary. [¶] (8) The safety of the relative's home . . . ." (§ 361.3, subd. (a).)

Moreover, the record in this case does not disclose that Sheena was found unsuitable as a placement for the children at the first section 387 hearing. Rather, the court sustained the petition, finding "the previous disposition is no longer effective for the protection of the children." Sheena was not provided with a copy of the section 387 petition, and was not notified of the hearing or given the opportunity to appear at the hearing even though Sheena had the right to contest the allegations of the section 387 petition. (*In re Jonique W.* (1994) 26 Cal.App.4th 685, 693 [31 Cal.Rptr.2d 601].) Under these circumstances, the first section 387 petition proceedings did not establish Sheena was unsuitable as a placement for the children.

■ In *Cesar V. v. Superior Court, supra,* 91 Cal.App.4th 1032, the Court of Appeal held a prior child protective history does not bar a relative from being evaluated and considered for placement of a dependent child under section 361.3. We find the case instructive. The juvenile court ordered the social services agency to evaluate the paternal grandmother for possible placement. (91 Cal.App.4th at p. 1027.) When the social worker learned of a prior allegation of abuse involving the grandmother and her son, the worker abandoned the assessment of the grandmother's home and began looking for another foster family. "The record shows the social worker did not make significant efforts to gather the required information before deciding [the grandmother] was unsuitable and abandoning the assessment. Furthermore, the social worker began looking for another foster family before [the grandmother] had even received SSA's forms." (*Id.* at p. 1033.) Noting that the agency was required to give a "fair chance" to a relative seeking placement and that the agency's approach had not been "within the spirit of the statute," the appellate court ordered the juvenile court to reverse its order denying placement with the grandmother and order the agency to complete its assessment of the grandmother as required by section 361.3. (91 Cal.App.4th at p. 1033.)

■ In essence, Agency's attitude toward Sheena was that she was disqualified from consideration as a placement option because the children had been removed from her home. This was not only legally incorrect, it also deprived Sheena of a "fair chance" to be the children's caretaker. (*Cesar V. v. Superior Court, supra,* 91 Cal.App.4th at p. 1033.) Further, it was not necessarily in the children's best interest. The linchpin of placement of dependent children is their best interests. (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 862–863 [11 Cal.Rptr.3d 1].) Antonio and Shakira had lived together since Shakira's birth. The need to place these two siblings together in the same home was great. After being removed from Michelle's home, Antonio and Shakira lived in separate foster homes, and the only foreseeable option for having them placed in the same adoptive home was

through an adoption agency in South Carolina. As the court acknowledged, "finding a home halfway across the country for a nine-year-old and [a] five-year-old who know their mother and don't want to leave their mother" was not an optimal alternative. Further, the South Carolina option was speculative; Agency did not know if the adoption agency could locate an adoptive family in South Carolina willing to take both children.

Under all the circumstances presented here, we find that Agency should have reevaluated Sheena and her home for placement after the children were removed from Michelle's home, using the criteria set forth in section 361.3, subdivision (a). (§ 361.3, subd. (d).)

Without a section 361.3 report before it, the court could not and did not follow its mandate to properly assess Sheena as a placement option under the criteria set forth in the statute. (§ 361.3, subd. (a).) In *In re H.G.* (2006) 146 Cal.App.4th 1 [52 Cal.Rptr.3d 364], this court reversed a removal order because the juvenile court had failed to consider the numerous factors set forth in section 361.3, subdivision (a). (146 Cal.App.4th at pp. 14–15.) We noted: "The Legislature has determined that *all* these factors are important in determining whether placement with a relative is not appropriate." (*Id.* at p. 16.)

In sum, Agency and the juvenile court essentially ignored their duty under section 361.3 to properly consider Sheena's request to have her two dependent grandchildren placed with her. Agency did not reevaluate Sheena using the criteria set forth in section 361.3, subdivision (a), and the juvenile court did not consider these criteria in assessing Sheena as a placement option. Accordingly, we reverse and remand for a new hearing.[4]

## DISPOSITION

The order denying Nina's section 388 petition is affirmed. The disposition order for the section 387 petition placing the children in foster care is reversed. The order denying Sheena's section 388 petition is vacated. The case is remanded for further proceedings with the following directions: The juvenile court shall order Agency to prepare a section 361.3 assessment report. Upon receipt of the report, the court shall conduct a new hearing in accordance with the views expressed in this opinion.

---

[4] In light of this disposition, Sheena's assignment of error regarding the denial of her section 388 petition is moot. (*Cesar V. v. Superior Court, supra,* 91 Cal.App.4th at p. 1036.)

The stay of the section 366.26 hearing, previously scheduled for December 11, 2007, will remain in force and effect until the relative placement issue is heard and resolved.

McIntyre, J., and O'Rourke, J., concurred.