Filed 7/19/13  In re E.L. CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **In re E.L. et al., Persons Coming Under the Juvenile Court Law.** | |
| **MARIN COUNTY HEALTH AND HUMAN SERVICES DEPARTMENT,** <br>     **Plaintiff and Respondent,** <br> **v.** <br> **MONIQUE L.,** <br>     **Defendant and Appellant.** | **A136428** <br><br> **(Marin County Super. Ct. Nos. JV25469A, JV25470A, JV25471A)** |

Monique L. (Mother) appeals from orders entered after the Marin County juvenile court sustained a Welfare and Institutions Code section 387[1] supplemental petition filed by respondent Marin County Health and Human Services Department (the Department). The juvenile court found its previous disposition had been ineffective in protecting Mother's three children, E, S, and N (collectively "Minors"), and it ordered them removed from Mother's custody.  E and N were placed with their maternal grandmother, L.T. (Grandmother), while S was placed with his father, Kenneth C. (Father).[2]

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Mother's three children all have different fathers.

1

Mother challenges a number of the juvenile court's findings as unsupported by the evidence. We have reviewed the evidence in the record and conclude it adequately supports the juvenile court's orders. Accordingly, we will affirm.

FACTUAL AND PROCEDURAL BACKGROUND[3]

The Department filed the first petition in this case in November 2011, by which time it had already received seven referrals regarding the family. The Department entered into an informal agreement with Mother that Minors would attend school regularly and meet with a dentist, and it referred Mother to agencies for assistance with rent and furnishing her home.

The Department received three further referrals, including allegations that S, who was then six years old, was wandering the streets alone rather than attending school and that Minors were not regularly fed or supervised during the day. During a visit by a Department social worker, Mother could not account for S's whereabouts. Additional referrals alleged S was stealing food from school and that Minors were exposed to drug use, because Mother was using substances with strangers in her home. Minors all had poor school attendance, which was an obstacle to their receipt of services.

After a home visit on November 10, 2011, during which the social worker saw a man who appeared to be under the influence of drugs upstairs in the home with Minors, the Department filed a petition alleging Minors were at substantial risk of physical harm or illness. Mother submitted to court-mandated services, and the juvenile court ordered her to attend parenting education. Minors were not detained and continued to reside with Mother in Marin City.

At the jurisdictional hearing, both Mother and Father submitted to jurisdiction, and the juvenile court found true the allegations of the petition. The court explained its concerns to Mother: "[W]e want to make sure that the children get to school on time; that

---

[3] In this section, we set forth the essential factual and procedural history of the case. Additional facts relevant to the issues Mother raises are included in the discussion section of this opinion.

2

they are properly fed; that they are properly cared for; that they don't miss school; that you are living in a clean and sober environment."

Mother had tested positive for cocaine and opiates in October 2011, and although the Department asked Mother to take another drug test prior to filing the petition, Mother failed to do so. It had also referred Mother to Center Point, a residential drug treatment center, for a drug and alcohol assessment, but Mother did not respond to Center Point's messages and did not complete the intake process to initiate drug testing. In its February 15, 2012 dispositional report, the Department stated Mother was resistant to providing additional drug tests. According to the report, Mother believed "that she is still young and wants to have fun, and does not think it is problematic to experiment with substances when the children are in the care of others." Mother was not concerned about Minors' exposure to drugs and drug paraphernalia. The report noted Mother still had not followed through on drug testing at Center Point or on appointments with CalWorks, a parent advocate, or the assigned family therapist.

Mother was at risk of losing the family's subsidized housing due to nonpayment of rent, and she had difficulty keeping food in the house despite receiving food assistance. The Department provided Mother with a list of food banks and distribution centers in Marin County and gave her a Safeway card to help her get through the month. In addition to the problems with housing and food, all three Minors were in need of medical and dental care.

At the dispositional hearing, Mother and Father submitted. Father was granted unsupervised visitation with S. The juvenile court ordered family maintenance services to Mother as set forth in the Department's case plan. Mother's case plan included requirements that she learn to develop a budget and to shop within her means and that she stay free from illegal drugs and comply with all required drug tests.

On May 7, 2012, Mother received an eviction notice and reported windows had been broken in her residence. Minors called Grandmother to come get them, and they moved to her home in Oakland. Mother stayed in Marin City and later moved in with her aunt in Hayward.

3

Also on May 7, the Department filed a section 388 petition requesting a change in Mother's case plan to include court-ordered inpatient drug and alcohol treatment at Center Point. The Department's request came after Mother had had two positive drug tests and then failed on three occasions to provide urine samples. Mother was also inconsistent with her and her children's appointments and was not meeting the goals of her case plan. Mother remained unable to keep Minors supplied with food, and Minors were losing access to services because of continued poor school attendance. Two days after the Department filed the section 388 petition, the social worker informed Mother there was an opening for her at Center Point. Mother scheduled an appointment with the program but did not keep it.

At the May 14, 2012 hearing on the petition, the Department indicated its willingness to allow Minors to stay with Grandmother through the week without a detention order on the condition that Mother enter Center Point. The juvenile court modified the case plan and ordered Mother to enter Center Point no later than May 18. The court made clear that Mother "must enroll in and remain in Center Point to have continued custody of these three children, and she is to enroll and get herself admitted in the first available bed."[4]

Mother did not enroll in Center Point, and the Department filed a section 387 petition seeking detention of Minors and their placement in out-of-home care. The Department alleged Mother had not complied with the court-ordered case plan and had failed to keep her intake appointment at Center Point. Mother also informed the social worker she did not intend to return to Marin County or go to Center Point. The family had been evicted from subsidized housing "for failure to pay rent for over a year." Minors were living with Grandmother in Oakland, but E and S were no longer attending school because there was no one to transport them to Marin County. Mother was still unable to provide food for the children throughout the month, even though both E and S qualified for free breakfasts and lunches at their schools.

---

[4] At the outset of the hearing, the court noted Father had filed a section 388 petition seeking custody of S. It scheduled a hearing on that petition for a later date.

On May 25, 2012, the juvenile court held a detention hearing on the Department's section 387 petition, and it also considered Father's request for custody of S. Mother did not object to the proposed placement of Minors with Grandmother, but she did challenge Father's request for custody of S. After hearing evidence of Mother's failure to enter in-patient treatment and ongoing substance abuse, her inability to manage her money to meet Minors' needs, and Minors' continued poor school attendance, the juvenile court found there was a substantial danger to Minors and there were no reasonable means to protect them without removal from Mother's custody. The juvenile court placed Minors with Grandmother and ordered that Mother receive services. It denied Father's petition for custody, but ordered that he receive services and visitation.

The Department's August 13, 2012 section 387 jurisdiction/disposition report made five recommendations to the juvenile court. It asked the court to: (1) continue to take jurisdiction over Minors; (2) place S in Father's custody; (3) order family reunification services for Mother; (4) order adoption of the Department's case plan; and (5) transfer the child welfare case to Alameda County. The report recounted Mother's failure to engage in the substance abuse treatment the court had ordered in May and Mother's inability to provide food for Minors. It noted Father had made clear his desire to have custody of S, and it set out the facts underlying the Department's opinion that placement with Father would be appropriate.

At the combined jurisdictional/dispositional hearing, the social worker testified Mother had been living in Alameda County since the middle of May, but despite referrals to treatment programs in that county, Mother had attended only one meeting at the East Oakland Recovery Center. Although Mother had an appointment with the Chrysalis inpatient treatment program, she could not enter the program unless her Medi-Cal benefits were transferred to Alameda County. According to the social worker, it was Mother's responsibility to arrange for the transfer of her benefits, but Mother did not do so. Even without a transfer of benefits, Mother could still have participated in treatment at the East Oakland Recovery Center, submitted to drug testing, and attended parenting classes.

The social worker also recommended that S be placed with Father, despite the boy's relationships with his half-siblings. The social worker had visited Father's home three times and had no safety concerns, and her assessment was that Father would provide for S's basic needs. She had no evidence that Father's substance abuse would impair his ability to care for S, and although Father and his wife admitted to occasional marijuana use, they had expressed a willingness to stop using the drug in order to have custody of S. Although the social worker had sent Father referrals for substance abuse counseling and parenting education, she did not know whether he had participated in those services. Nevertheless, her recommendation that S be placed with Father was not conditioned upon Father undergoing services. She explained that he maintained steady employment, made appointments for S, and followed up "on other things that a parent should follow up on."

The court also heard S's testimony about living with Father. S told the court that at his Father's home, the family ate dinner together. He liked Father's wife, whom he called "mom." S said Father's wife would take him and his half-sister, A, to the park. The boy said he was in first grade and enjoyed school. When he went to school, Father and his wife would make S's lunch. Since living with Father, S said he had never been hit or yelled at by either Father or his wife. S liked living with his father, and he was allowed to call Grandmother and E from Father's home.

At the conclusion of the hearing, the court sustained the Department's petition and ordered Minors removed from Mother's custody, while granting Mother reunification services and supervised visitation. The court changed the Department's recommended case plan for Mother, which had provided she would participate in a six-month residential treatment program. Instead, it ordered she be assessed in Alameda County, where the case was to be transferred, and it noted that the Alameda court could adopt its own recommendation for substance abuse treatment.

The juvenile court ordered E and N placed with Grandmother, while S was placed with Father. It considered the need for S to maintain a bond with his half-siblings, but on balance concluded S would be better off living with Father in a stable and secure home.

6

It provided for regular visitation between S and his half-siblings. Father was to receive family maintenance services, including parenting counseling and some form of substance abuse treatment or counseling. The court ordered the case transferred to Alameda County.

Mother then filed a timely notice of appeal from the court's orders.

DISCUSSION

Mother raises four arguments on appeal, all of which challenge the sufficiency of the evidence underlying the juvenile court's findings. She first contends there was insufficient evidence to support the juvenile court's determination that its previous disposition had been ineffective. She then argues the evidence was insufficient to support Minors' removal from her custody. Mother also asserts the Department failed to make reasonable efforts to prevent or eliminate the need for removal. Finally, she contends the juvenile court erred in placing S in Father's custody. We address Mother's contentions in the order presented.

I.      *The Juvenile Court Did Not Err in Finding the Previous Disposition Ineffective.*

Mother contends the evidence was insufficient to sustain the Petition's allegation that the previous disposition had been ineffective. (See Cal. Rules of Court, rule 5.565(e)(1)(B) [at hearing on supplemental petition, juvenile court must make finding that "[t]he allegation that the previous disposition has not been effective is or is not true"].) She argues the previous disposition was effective because Mother kept Minors safe by moving them to Grandmother's home and because the juvenile court no longer required Mother to be in residential substance abuse treatment. We disagree.

A.      *Governing Law and Standard of Review*

Section 387 provides in relevant part: "(a) An order changing or modifying a previous order by removing a child from the physical custody of a parent . . . shall be made only after noticed hearing upon a supplemental petition. [¶] (b) The supplemental petition shall be filed by the social worker in the original matter and shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the child . . . ."

Such a petition is ordinarily required when, as in this case, the Department "concludes that a previous disposition has not been effective in the protection of a child declared a dependent under section 300 and seeks a more restrictive level of physical custody." (Cal. Rules of Court, rule 5.560(c).)

The hearing on a supplemental petition is a bifurcated proceeding. (Cal. Rules of Court, rule 5.565(e).) In the first, or "jurisdictional" phase of the proceeding, the Department has the initial burden of showing by a preponderance of the evidence that the factual allegations in the petition are true. (Cal. Rules of Court, rule 5.565(e)(1)(A); *In re Jonique W.* (1994) 26 Cal.App.4th 685, 691.) "If the court finds the factual allegations are true, then the court determines whether the previous disposition is no longer effective in protecting the child . . . ." (*In re H.G.* (2006) 146 Cal.App.4th 1, 11; Cal. Rules of Court, rule 5.565(e)(1)(B).) "The ultimate 'jurisdictional fact' necessary to modify a previous placement with a parent . . . is that the previous disposition has not been effective in the protection of the minor." (*In re Jonique W., supra,* 26 Cal.App.4th at p. 691.)

If the juvenile court finds the factual allegations of the petition true and further finds that the previous disposition has not been effective, it must then conduct a dispositional hearing in accordance with California Rules of Court, rule 5.565(e)(2). (See *In re Jonique W., supra,* 26 Cal.App.4th at p. 691.) In the dispositional phase, the court must consider whether removal of the minor from his or her placement is required. (*In re H.G., supra,* 146 Cal.App.4th at p. 12.) "Before a minor can be removed from the parent's custody, the court must find, by clear and convincing evidence, '[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody.'" (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163, quoting § 361, subd. (c)(1).)

Removal may be ordered if there is proof of the parent's inability to provide proper care for the minor and of potential detriment to the minor if he or she remains in

the parent's care. (*In re T.W., supra,* 214 Cal.App.4th at p. 1163.) "The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on *averting* harm to the child." (*Ibid.*, italics added.)

We review an order sustaining a section 387 petition for substantial evidence. (*In re A.O.* (2010) 185 Cal.App.4th 103, 109.) "The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order. [Citation.] On a challenge to an order removing a dependent child from his or her parent, we 'view the record in the light most favorable to the order and decide if the evidence is reasonable, credible and of solid value.' [Citation.] We draw all reasonable inferences from the evidence to support the findings and orders of the dependency court." (*In re Javier G.* (2006) 137 Cal.App.4th 453, 462-463.) As a consequence, the substantial evidence standard of review is extremely difficult to meet, because it is not the function of an appellate court to determine the facts. (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)

B.      *Substantial Evidence Supports the Juvenile Court's Findings.*

Mother does not appear to dispute the truth of the factual allegations of the petition. (See Cal. Rules of Court, rule 5.565(e)(1)(A).) Instead, she argues there was no substantial evidence to support the juvenile court's finding that the previous disposition had been ineffective. She contends the allegations of the supplemental petition involved matters "that were largely before the court when the court sustained the original petition and ordered family maintenance services, particularly Mother's substance abuse and her inability to provide the children with food."[5] Mother acknowledges there were two new issues—her family's eviction and her failure to enroll in Center Point—but asserts that neither of these allegations supported a finding that the previous disposition was ineffective. We disagree.

---

[5] This argument is largely beside the point. "A section 387 petition need not allege any new jurisdictional facts, or urge different or additional grounds for dependency because a basis for juvenile court jurisdiction already exists." (*In re T.W., supra,* 214 Cal.App.4th at p. 1161.)

Initially, we note Mother largely ignores the limited nature of substantial evidence review. Her opening brief seeks to reargue the evidence, but she "would be well advised to remember it is the function of the trier of fact, not the appellate court, to determine the facts, and to cast [her] arguments in this court within the confines of that basic principle." (*In re Michael G., supra,* 203 Cal.App.4th at p. 584.) As we have explained, "[t]he Court of Appeal is not a second trier of fact[.]" (*James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1021.) To prevail on appeal, Mother must demonstrate that there is no substantial evidence to support the juvenile court's findings. "'A recitation of only [appellant's] evidence is not the "demonstration" contemplated under the above rule. [Citation.] Accordingly, if, as [appellant] here contend[s], "some particular issue of fact is not sustained, [appellant is] required to set forth in [her] brief *all* the material evidence on the point and *not merely* [*her*] *own evidence*. Unless this is done the error is deemed to be [forfeited]." (Italics added.) [Citations.]'" (*In re S.C.* (2006) 138 Cal.App.4th 396, 414-415.)

The Department's brief sets out the evidence supporting the juvenile court's finding that the previous disposition had been ineffective in protecting Minors. First, Mother continued to abuse drugs, despite receiving services and despite the court's warnings that failure to address her substance abuse would lead to removal of Minors from her custody. (See *In re A.O.* (2004) 120 Cal.App.4th 1054, 1063 [concerns about grandmother's drug use supported removal of dependent children from her custody].) Because of her substance abuse, Mother was unable to meet the goals in her case plan; she failed to take Minors to scheduled dental appointments and was evicted for nonpayment of rent. The detrimental effects on Minors were obvious, as N lost her place at preschool due to poor attendance and S was unable to receive special education services for the same reason. Mother could not even provide adequate food for Minors. Moreover, Mother was not participating in court-ordered services, and her parent aide and therapist stopped working with her due to her failure to progress. (See *Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763 [parent's failure to participate in services is prima facie evidence that return of minor to parent's custody would be detrimental].)

10

Thus, substantial evidence supports the juvenile court's findings that the previous disposition was ineffective in protecting Minors. (See *In re Javier G., supra,* 137 Cal.App.4th at pp. 461-462 [affirming finding that prior dispositional order was ineffective where mother was not able to provide sufficient structure and supervision to control her sons' abuse of their siblings].)

Mother nevertheless claims the previous disposition was effective because she had moved the children to Grandmother's home. As the Department points out, however, this fact actually *supports* the court's removal order, since it demonstrates that Grandmother was caring for Minors because of Mother's inability to do so. We also reject Mother's argument that the previous disposition was effective because the court no longer required Mother to be in residential treatment. This is a misreading of the record. The juvenile court did not rule that Mother no longer required residential treatment. Instead, it ordered Mother to have a substance abuse assessment in Alameda County and left it up to the Alameda County court to "adopt its own recommendation for substance abuse treatment." This is a far cry from saying residential treatment was no longer required.

II.     *Substantial Evidence Supports the Decision to Remove Minors from Mother's Custody.*

Mother contends there was insufficient evidence to support removal of the Minors from her custody. She argues this is not a case of extreme parental abuse and neglect and asserts that family maintenance services were a reasonable means of protecting Minors without removal. Again, we disagree.

The juvenile court found removal justified because there was clear and convincing evidence of the circumstances stated in section 361, subdivision (c)(1). Under that subdivision, minors may be removed from parental custody when there is clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).)

11

Substantial evidence supports the juvenile court's findings. Many of the facts detailed in the preceding section of this opinion also support the juvenile court's decision to remove Minors from Mother's custody. Mother continued to abuse drugs despite receipt of services. Perhaps most important, she was not providing her children with adequate food. The Department reported that on at least one occasion, Mother used money intended for the purchase of food to buy cigarettes for herself. Mother's continued substance abuse, her failure to provide Minors with sufficient nutrition, and her neglect of her children's dental care fully support the juvenile court's finding that there would be a substantial danger to Minors' well being if they remained in Mother's home, and there was no reasonable means of protecting their physical health unless they were removed from Mother's custody. (See *In re A.O., supra,* 120 Cal.App.4th at p. 1063 [concerns about grandmother's drug use and failure to provide adequate child care supported removal of dependent children from her custody].)

These facts also refute Mother's argument that family maintenance services would have been adequate to protect Minors. Minors were ordered removed because of Mother's demonstrated failure to discharge her parental responsibilities despite having what the social worker called "a long list of supportive services in place." As the Department's jurisdiction/disposition report put it, "[d]espite all of the extensive support and services provided to her and her family, [Mother] was unable to utilize the assistance provided in order to stabilize her life." "A parent whose children have been adjudged dependents of the juvenile court is on notice of the conduct requiring such state intervention. If such a parent in no way seeks to correct his or her own behavior or waits until the impetus of an impending court hearing to attempt to do so, the legislative purpose of providing safe and stable environments for children is not served by forcing the juvenile court to go 'on hold' while the parent makes another stab at compliance." (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5.)

III.    *There Is Substantial Evidence the Department Made Reasonable Efforts to Prevent or Eliminate the Need for Minors' Removal.*

Mother also contests the juvenile court's finding that the Department made reasonable efforts to prevent or eliminate the need for removal. (See § 361, subd. (d); *In re Javier G., supra,* 137 Cal.App.4th at p. 463.) Specifically, she contends the Department failed to: (1) assist her in transferring her Medi-Cal benefits to Alameda County and (2) provide adequate visitation between Mother and S. We conclude the juvenile court's finding is supported by substantial evidence. (See *id.* at p. 465.)

"[R]easonable efforts, like reasonable services, need only be reasonable under the circumstances, not perfect. [Citation.]" (*In re H.E.* (2008) 169 Cal.App.4th 710, 725.) Furthermore, the social worker was not required to "take [Mother] by the hand" if Mother refused to avail herself of the services offered. (*In re Michael S., supra,* 188 Cal.App.3d at p. 1463, fn. 5.) Here, there was substantial evidence from which the juvenile court could find the Department's efforts reasonable.

The Department's jurisdiction/disposition report contains a lengthy list of family maintenance services it either provided or offered to Mother. These services were in addition to other supportive services already in place before the family maintenance case was established, including food stamps and other food assistance, subsidized housing, a parent aide, and therapeutic services. While Mother faults the Department for being insufficiently helpful in getting her Medi-Cal benefits transferred to Alameda County, the social worker called a CalWorks provider about assisting Mother, provided the name and phone number of a Medi-Cal worker for Mother to contact, and spoke with a worker at a residential program for Mother about getting Mother's general assistance and Medi-Cal benefits transferred. The social worker also testified, however, that she had no authority over the transfer of Medi-Cal benefits and that arranging the transfer was Mother's responsibility. After Mother's move, the social worker sent Mother a list of treatment programs in Alameda County, referred Mother for housing, and provided public transportation cards so Mother could get to and from groups at a treatment center where Mother had enrolled. Based on this evidence, the juvenile court could certainly conclude

13

the Department had made reasonable efforts. (*In re Javier G., supra,* 137 Cal.App.4th at pp. 464-465.)

Mother's complaint about lack of visitation and contact with S appears to concern a three-week period before the August 24, 2012 hearing in which Mother contends no arrangements were made for contact between S and Mother, his siblings, or Grandmother.[6] The social worker testified this lack of contact was due to an ongoing investigation into allegations S appears to have made about being sexually assaulted by an adult male while in Mother's care. The social worker also testified that she did not arrange for contact between S and other family members because she did not want to interfere with the Marin County Sheriff's efforts to coordinate interviews related to the investigation.

Mother does not dispute the sexual assault allegations were made, nor does she claim the social worker and the sheriff should not have investigated them. Her argument seems to be only that the investigation either took too long or was merely an "excuse" for not facilitating contact between S and his maternal family. Mother does not tell us why she believes the investigation was unreasonably long, and she points us to no record evidence to support her claim that the investigation was merely an excuse. Even though the allegations and investigation did not result in a new petition, we hardly think it proper to fault the social worker for taking them seriously and investigating them. On this record, the juvenile court could certainly conclude the Department had made reasonable efforts despite any failure to arrange visitation or contact with S during the relatively brief period necessary to conduct an investigation into very serious allegations. (See *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 692 [upholding finding that agency provided reasonable services despite social worker's admittedly erroneous, but temporary, suspension of visitation].)

---

[6] Mother's briefs do not provide the specific dates during which she contends there was no contact. In her opening brief, she refers to the three weeks preceding the August 24, 2012 hearing. Her reply brief asserts S did not have contact with his maternal family for "many weeks."

IV.    *Father Is Legally Entitled to Custody of S Absent Clear and Convincing Evidence the Placement Would be Detrimental.*

Finally, Mother contends the juvenile court erred in placing S with Father, S's noncustodial parent.  Under section 361.2, subdivision. (a), when the juvenile court orders the removal of a minor under section 361, the court shall place the child with a noncustodial parent who requests custody "unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."  (§ 361.2, subd. (a).)  Father requested custody of S in this case.  When such a request is made, "[t]he court must first determine whether it would be detrimental to the child to temporarily place the child in [the noncustodial] parent's physical custody.  If there is no showing of detriment, the court *must* order the [Department] to temporarily place the child with the nonoffending noncustodial parent."  (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1135, italics added.)  Here, the juvenile court found placement with Father would not be detrimental to S, and it awarded Father custody.

Mother seeks to persuade us that, contrary to the court's findings, placement with Father would be detrimental to S.  We reject Mother's argument for a number of reasons.  First, she misunderstands the burden of proof on the detriment issue.  Second, Mother has forfeited this argument by ignoring our standard of review.  Third, even if the argument were not forfeited, substantial evidence supports the juvenile court's decision.

While Mother's brief correctly notes that a detriment finding under section 361.2 must be made by clear and convincing evidence, she fails to acknowledge she bore the burden of proof on this issue in the court below.  As the Third District recently explained, "'a nonoffending parent has a constitutionally protected interest in assuming physical custody, as well as a statutory right to do so, in the absence of clear and convincing evidence that the parent's choices will be "detrimental to the safety, protection, or physical or emotional well-being of the child."'"  [Citation.]  It is *not* the nonoffending parent's burden to show that [he] is capable of caring for [his] child.  Rather, it is the *party opposing placement* who has the burden to show by clear and convincing evidence that the child will be harmed if the nonoffending parent is given custody."  (*In re Z.K.*

15

(2011) 201 Cal.App.4th 51, 70, italics added.) Thus, as the party opposing placement with Father, it was up to Mother to demonstrate, by clear and convincing evidence, that placing S with his father would be "detrimental to [S's] . . . safety, protection, or physical or emotional well-being[.]" (§ 361.2, subd. (a).)

The allocation of the burden of proof in the juvenile court affects our standard of review. Ordinarily, we would review the juvenile court's detriment finding under the substantial evidence test. (E.g., *In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426.) "But this test is typically implicated when a defendant contends that the plaintiff succeeded at trial in spite of insufficient evidence. In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. . . . [¶] [W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' [Citation.]" (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.)

Because Mother bore the burden of proof on the detriment issue, on appeal, she must show the evidence of detriment was so strong as to require the juvenile court to find in her favor as a matter of law. (*In re I.W., supra,* 180 Cal.App.4th at p. 1528.) Rather than attempting this showing, Mother simply recites the evidence that favors her position, while much of the evidence supporting the juvenile court's finding goes unmentioned. Such a factual presentation would be inadequate even under the traditional substantial evidence test, because "[e]vidence not favorable to the [appellant] cannot be simply ignored as if it does not exist." (*James B. v. Superior Court*, *supra*, 35 Cal.App.4th at p. 1021.) But it is doubly insufficient here, where Mother's burden on appeal is not merely to show the lower court's finding is unsupported by the evidence, but also to show the uncontradicted and unimpeached evidence *compels* a finding in her favor. (*In re I.W.,*

16

*supra,* 180 Cal.App.4th at p. 1528.) "We therefore decline [M]other's implicit invitation to review the record so as to recount evidence that supports her position (reargument) with the object of reevaluating the conflicting, competing evidence and revisiting the juvenile court's failure-of-proof conclusion." (*Ibid.*) Her failure to provide an argument tailored to our limited standard of review effectively forfeits the point. (See *In re S.C., supra,* 138 Cal.App.4th at pp. 414-415.)[7]

Even if the argument is properly before us, it is meritless. Mother's principal contentions are that Father had unaddressed anger management and substance abuse problems and that it was detrimental to separate S from his half-siblings. With respect to Father's alleged anger management problem, Mother herself testified Father had addressed his anger at her. Grandmother testified she and Father had always gotten along and that only Father's relationship with Mother was contentious. The social worker testified S was not afraid of Father and that the boy had not witnessed any kind of violence in Father's home.

Although both Father and his wife admitted to occasional marijuana use, they informed the social worker that they would give up marijuana so they could parent S. The social worker testified there was no evidence Father's marijuana use would impair his ability to parent S. Furthermore, Father had already demonstrated his ability to parent by maintaining steady employment, looking after things such as S's schooling and appointments, caring for S during the summer, and successfully raising S's little half-sister. Finally, the juvenile court recommended Father be assessed by Alameda County regarding marijuana use.

Mother's argument that it was detrimental to separate S from his siblings is based in part on her assertion that there was no evidence that Father would maintain visitation between the siblings. The transcript of the juvenile court's ruling demonstrates, however,

---

[7] As stated in the text, Mother's argument also fails under the traditional substantial evidence standard because "'if, as [appellant] here contend[s], "some particular issue of fact is not sustained, [appellant is] required to set forth in [her] brief *all* the material evidence on the point and *not merely [ her ] own evidence.* Unless this is done the error is deemed to be [forfeited]."'" (*In re S.C., supra,* 138 Cal.App.4th at pp. 414-415.)

17

that the court devoted considerable time and attention to the issue of visitation and the sibling bond. It ordered regular visitation and telephone contact between S and his half-siblings. We presume these orders will be followed.

In the end, the court did not place S with his half-siblings because the Minors have different fathers, and it found it appropriate to place S in Father's care. Thus, the juvenile court stated it had "considered very seriously the bond that exists between the children." It desired to maintain that relationship, but found "on balance, it is to [S's] best interest and greater interest, that he be living with his dad, . . . in a stable, secure home, attending school and being well cared for, versus the benefit that may arise from being with his brother and sister with his grandmother, and the possibility he may go back to live with his mother or may wind up in foster care . . . ." We cannot say this decision is unsupported by the evidence.

DISPOSITION

The orders from which the appeal is taken are affirmed.

_____
Jones, P.J.

We concur:

_____
Needham, J.

_____
Bruiniers, J.

18