[No. A062034. First Dist., Div. Two. July 1, 1994.]

In re JONIQUE W. et al., Persons Coming Under Juvenile Court Law.
CONTRA COSTA COUNTY SOCIAL SERVICE DEPARTMENT,
Plaintiff and Respondent, v.
SANDRA W., Defendant and Appellant.

COUNSEL

Joan A. Borger, under appointment by the Court of Appeal, and Mat Swerling for Defendant and Appellant.

Victor J. Westman, County Counsel, and Valerie J. Ranche, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**PHELAN, J.**—Appellant Sandra W. timely appeals from an order of the juvenile court sustaining a supplemental petition filed by respondent Contra Costa Social Service Department (the department) as to her granddaughters, Delleisha H. and Jonique W. The minors were originally declared dependents of the juvenile court after they were abandoned by their mother, appellant's daughter, in May 1990 (Welf. & Inst. Code, § 300, subds. (b) and (j)),[1] and placed with appellant under a permanent plan of long-term foster care (§ 366.26, subd. (b)(4)). In the supplemental petition (§ 387), which was filed in December 1992, the department alleged that the placement with appellant was not effective in protecting of the minors because, inter alia, appellant made an inappropriate child care plan for the minors which resulted in sexual molestation of Delleisha.

In this appeal, appellant contends that the court erred when it refused to allow her to present any evidence to contest the allegations of the supplemental petition. She further contends that the court's findings were not supported by substantial evidence. We agree with both of these contentions. Accordingly, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Because of their mother's inability and unwillingness to provide for their care and protection, Delleisha H. and Jonique W. were adjudged dependents of the juvenile court on May 25, 1990. At that time, Delleisha and Jonique were, respectively, three and a half years and five months of age. The children were formally placed with appellant, their maternal grandmother, with whom they had already spent most of their lives.

The minors' parents were unable to reunify with their children during the statutory time period and, accordingly, the case was set for a permanency

---

[1]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

planning hearing on May 10, 1991. At that hearing, the court ordered that the children remain with appellant under a plan of long-term foster care. Although appellant was willing to be appointed legal guardian for the minors, the department recommended the foster care arrangement because of concerns about appellant's health and her relationship with her own daughter, the girls' mother. Delleisha and Jonique continued to live with appellant for 19 months following the permanency planning hearing. It was reported at court reviews on October 18, 1991, and March 27, 1992 (§ 366.3, subd. (c)), that appellant's care of the minors was appropriate and that the girls were healthy and thriving.

In a status report for the September 4, 1992 court review, however, the social worker asserted that Delleisha had been examined over a month earlier and diagnosed as having venereal warts. Delleisha was six years old at the time of the report. The social worker further stated, "These warts are presumably transmitted to a child during sexual molestation. Transmission at birth is a valid assumption in a younger child. An exploratory sexual abuse interview with Delleisha did not reveal the identity of the molester. Delleisha has been referred to the Rape Crisis Center for counseling." Despite this revelation, the court ordered no change in the permanent plan and the minors remained in appellant's custody for three more months.

On December 14, 1992, the department filed supplemental petitions (§ 387), alleging that placement with appellant had been ineffective in protecting the minors in that appellant: (1) made an inappropriate child care plan for the minors, which resulted in sexual molestation of Delleisha; (2) failed to provide the department with all known information about the molestation; (3) failed to obtain medically prescribed treatment for Delleisha; and (4) kept Delleisha out of school from September 1991 through June 1992 without providing equivalent and effective home study during that period. In conjunction with the filing of the supplemental petition, both minors were removed from appellant's custody and detained after a hearing pursuant to section 305 et seq.

The first hearing regarding the supplemental petition was held on December 30, 1992. At that hearing, appellant requested and was granted de facto parent status. Appellant also requested and was initially denied appointment of counsel by the referee. However, upon rehearing, the superior court appointed counsel for appellant on February 3, 1993.

Appellant also asked the court to set a "contested" hearing on the petition. The mother of the minors, appellant's daughter, was willing to stipulate to the supplemental petition and opposed her mother's request for a contested

hearing. After submission of points and authorities and argument, the court denied appellant's request. Apparently believing that appellant's rights were limited to those of a de facto parent as expressly set forth in the "code and Rules of Court," the referee held that "they are not intended by the legislation, I do not believe, to set a contested jurisdictional hearing. They have the right to present evidence at hearings, but not to initiate those hearings themselves, I don't believe."

On April 7, 1993, the court convened a combined six-month review and "jurisdiction/disposition" hearing on the supplemental petition. At that hearing, the court received and considered the social worker's report and, solely on that basis, sustained the supplemental petition. Apparently, following the April 7 hearing, Delleisha was placed with her paternal grandmother, and Jonique was placed in a licensed foster home. This timely appeal followed.

## II. DISCUSSION

This appeal presents the issue whether the juvenile court erred in ruling that appellant, a relative who was also undisputedly the de facto parent of the dependent minors, lacked standing to contest the supplemental petition at the section 387 hearing held in this case. We conclude that it did, and hold that section 387, as implemented by the California Rules of Court[2] provides appellant with standing to participate as a party to the proceedings on the supplemental petition, and to present evidence to defend against the allegations about her conduct contained therein.

A. *A Custodial Relative, Who Is Also a De Facto Parent, Is Entitled to Present Evidence at the "Jurisdictional" Phase of a Bifurcated Hearing on a Section 387 Petition to Defend Against Factual Allegations About His or Her Failure to Protect the Minor.*

In relevant part, section 387 provides: "An order changing or modifying a previous order by removing a minor from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, . . . shall be made only after a noticed hearing upon a supplemental petition." The supplemental petition must be filed in the original dependency action, and must "contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor." (*Id.*, subd. (a).) A section 387 petition is ordinarily required when the petitioner (usually the relevant social services agency) seeks to modify a dispositional order by establishing the need for a "more restrictive level" of custody. (Rule 1430(c).) The clerk of

---

[2]All further references to rules are to the California Rules of Court.

the juvenile court is required to set the supplemental petition for hearing within 30 days of filing. (§ 387, subd. (b).)

█ In proceedings on a supplemental petition, a bifurcated hearing is required. (*In re Fred J.* (1979) 89 Cal.App.3d 168, 178 [152 Cal.Rptr. 327]; rule 1431(e)(1); and see generally, 5 Markey, Cal. Family Law Practice & Procedure (1993 rev.) §§ 87.02, 87.04, pp. 87-7 to 87-12, 87-16 to 87-20.) In the first phase of a section 387 proceeding, the court must follow the procedures relating to a jurisdictional hearing on a section 300 petition, as set forth in rules 1449 through 1452. (Rule 1431(e)(1).) At the conclusion of this so-called "jurisdictional phase" of the section 387 hearing (see Markey, *supra*, § 87.04, pp. 87-16 to 16.1), the juvenile court is required to make findings whether: (1) the factual allegations of the supplemental petition are or are not true; and (2) the allegation that the previous disposition has not been effective in protecting the child is, or is not, true. (Rule 1431(e)(1).) If both allegations are found to be true, a separate "dispositional" hearing must be conducted under the procedures applicable to the original disposition hearing, i.e., rules 1455 through 1456. (Rule 1431(e)(1).)

█ Upon filing of a supplemental petition, the parents, guardians and the "present custodian" of the dependent child must be given notice of both the hearing and the contents of the supplemental petition. (Rules 1407(e), 1431(c); see also § 387.) These notice requirements are imposed "so that the parents and any other interested parties are apprised of the allegations they must be prepared to meet." (*In re Neal D.* (1972) 23 Cal.App.3d 1045, 1050 [100 Cal.Rptr. 706]; see also *In re Stephen W.* (1990) 221 Cal.App.3d 629, 640 [271 Cal.Rptr. 319].) Parents, guardians and the "present custodian" of the dependent child are also entitled to request that the clerk of the juvenile court issue subpoenas requiring attendance and testimony of witnesses, and production of documents at the hearing. (§ 341; rule 1408(d).)

█ As we have noted, the "jurisdictional" phase of the section 387 hearing is a factfinding proceeding to determine whether the allegations of the supplemental petition are true. (Rule 1431(e)(1); see also *In re Joel H.* (1993) 19 Cal.App.4th 1185, 1200 [23 Cal.Rptr.2d 878]; 5 Markey, *supra*, § 87.04, pp. 87-16 to 87-16.1.) The ultimate "jurisdictional fact" necessary to modify a previous placement with a parent or relative is that the previous disposition has not been effective in the protection of the minor. (§ 387; *In re Joel H.*, *supra*, 19 Cal.App.4th at p. 1200; *In re Michael S.* (1987) 188 Cal.App.3d 1448, 1460 [234 Cal.Rptr. 84].) The department must prove the jurisdictional facts by a preponderance of legally admissible evidence. (See § 355; rules 1431(e) and 1450(b), (f); and see Markey, *supra*, § 87.04[2][a], p. 87-17.)

The department's burden may be satisfied by a knowing and voluntary admission or plea of no contest to the "jurisdictional" issue, freely entered by the person whose conduct is at issue in the petition, coupled with a waiver of further jurisdictional proceedings. (Rules 1431(e), 1449(c)-(g).) That person—who must also "understand[] the nature of the conduct alleged in the petition and the possible consequences of an admission or plea of no contest" (rule 1449(f)(4))—is usually a "parent or guardian" for purposes of a section 300 petition. (See, e.g., § 300, subds. (a) [serious physical harm inflicted by the minor's "parent or guardian"], (b) [serious physical harm resulting or likely to result from failure of "parent or guardian" to adequately supervise or protect the minor], (c) [serious emotional damage to the minor as a result of conduct of the "parent or guardian"], (d) [sexual abuse by a "parent or guardian" or other member of the child's household, or failure of the "parent or guardian" to protect the child from sexual abuse]; but see *In re Jamie G.* (1987) 196 Cal.App.3d 675, 677-678 [241 Cal.Rptr. 869] [section 300 petition filed based on failure of unrelated de facto parents to provide suitable habitation for a three-year-old "give away" child who had lived with them since birth].)

For purposes of a section 387 petition, however, rule 1449 must be read in light of rule 1431 to include a "relative or friend" who has physical custody of the minor, at least where that person's conduct precipitated the filing of the supplemental petition. (See § 387; rule 1431(c), (e).) It is only such a person who can effectively admit or plead no contest to the allegations of the petition. This is perforce true with a permanent plan of long-term foster care, under which it is unlikely that any parent or guardian would have personal knowledge of the "nature of the conduct alleged in the petition." (Rule 1449(f)(4).) Such a custodial "relative or friend" may also suffer adverse consequences from an admission that the factual allegations are true. (*Ibid.*)

Similarly, when applied to a section 387 petition, the contested hearing procedures of rule 1450 must be construed as applying not only to the "parent or guardian" mentioned on the face of that rule, but also to the custodial "relative or friend" who is in a position to deny factual allegations about a failure adequately to protect the child while in his or her custody. (§ 387; rule 1431(c), (e).) Thus, if the relevant "parent, guardian, relative or friend" denies the allegations of the supplemental petition, the court must conduct a contested hearing to resolve factual disputes and determine whether the allegations of the petition are true. (Rule 1450(a).) ■ At the contested hearing on a supplemental petition, a report filed by the responsible social worker is admissible if the author is made available for cross-examination on the contents of the report. (Rule 1450(c).) Opposing parties must also be allowed to subpoena and examine the person(s) whose hearsay

statements are contained in the report, and to introduce evidence by way of rebuttal. (*In re Malinda S.* (1990) 51 Cal.3d 368, 382-383, fn. 16 [272 Cal.Rptr. 787, 795 P.2d 1244]; *Long* v. *Long* (1967) 251 Cal.App.2d 732, 736 [59 Cal.Rptr. 790].)

 Under this analysis, we conclude that section 387, as implemented by the foregoing California Rules of Court, provides a custodial relative with standing to contest a supplemental petition in the hearing required by that provision, at least where the relative's conduct and the removal of the minor(s) from the relative's physical custody are at issue. The juvenile court erred by refusing to recognize appellant's standing to contest the supplemental petition in this case.

That conclusion does not end our inquiry. As the parties note, unlike a "de facto parent" who is generally entitled to "present evidence" at a dependency hearing (rule 1412(e)(3)), a "relative" ordinarily has only the more limited right to "address the court" (rule 1412(f)(2)). Thus, it is arguable that, even if he or she can demand a contested hearing, the Rules of Court do not permit full participation by a mere "relative" in the presentation of evidence and other aspects of adversarial dependency proceedings.

In this case, there is an obvious response to the foregoing argument: Appellant in this case was *both* a custodial relative and the undisputed de facto parent of the minors. On that basis, she was entitled to "present evidence" (rule 1412(e)(3)), and otherwise to participate as a full party to the contested hearing. (*In re Kieshia E.* (1993) 6 Cal.4th 68, 75-76 [23 Cal.Rptr.2d 775, 859 P.2d 1290]; *In re B. G.* (1974) 11 Cal.3d 679, 693 [114 Cal.Rptr. 444, 523 P.2d 244]; *In re Jody R.* (1990) 218 Cal.App.3d 1615, 1626 [114 Cal.Rptr. 444, 523 P.2d 244]; *In re Joshuia S.* (1988) 205 Cal.App.3d 119 [252 Cal.Rptr. 106]; *Katzoff* v. *Superior Court* (1976) 54 Cal.App.3d 1079, 1084 [127 Cal.Rptr. 178] [*Katzoff*]; see also rule 1412(e).) Although it is clear that de facto parents do not have all the substantive rights and preferences of legal parents or guardians, they have been afforded procedural rights in order to "assert and protect their own interest in the companionship, care, custody and management of the child" (*In re B. G.*, *supra*, 11 Cal.3d at p. 693), and to "ensure that all legitimate views, evidence, and interests are considered" by the juvenile court in dependency proceedings. (*In re Kieshia E.*, *supra*, 6 Cal.4th at p. 76.)

This case is closely analogous to *Katzoff*, *supra*, 54 Cal.App.3d 1079. In that case, a child was placed in a foster home shortly after birth because of neglect and abuse by his natural parents. (*Id.* at p. 1081.) The child's foster parents, the Katzoffs, cared for him for a period of approximately two years,

at the end of which the social services department sought to terminate the parental rights of his natural parents. (*Id.* at p. 1082.) Simultaneously, however, the department requested that the child be removed from the Katzoff's home and placed with another foster family. The department alleged that the Katzoffs had failed to cooperate with the department in allowing visitation by the natural mother. The department also sought removal, alleging that since the child was Black and the Katzoffs were White, their home was not an adoptive possibility and that he should be placed with Black foster parents who " '. . . understand the relationship with the natural parents and their obligations.' " (*Ibid.*)

In opposition to the request for a change of placement, the Katzoffs' attorney offered their denial of the department's allegations. The attorney also offered the testimony of Mrs. Katzoff and submitted letters from medical and psychological experts who supported the Katzoffs' contention that placing the child in another foster home pending further proceedings would not be in the child's best interests. The juvenile court, however, refused to allow the Katzoffs to present any evidence to contest the department's allegations, and ordered the child removed from their custody. (*Katzoff, supra,* 54 Cal.App.3d at pp. 1082-1083.)

The Court of Appeal concluded that this was reversible error, holding that the Katzoffs had been denied their rights as de facto parents. (*Katzoff, supra,* 54 Cal.App.3d at p. 1084.) The court further held that "If the participation of the foster parents, either through their testimony or by their presentation of other evidence, would have provided the court with relevant information as to [the dependent child's] best interests, the court should have permitted their participation and considered the evidence." (*Ibid.*)

The same is true here. Although the juvenile court recognized that appellant was the de facto parent of the minors, it refused to allow her to present any evidence to contest the department's allegations about her conduct or otherwise to provide the court with relevant information about the girls' best interests. This was error. (*Katzoff, supra,* 54 Cal.App.3d at p. 1085.) Indeed, the error here was in some respects more egregious than in *Katzoff.* There, the de facto parents were attempting to avoid removal of their foster child, who had lived with them for two years but who was likely to be removed in the near future upon completion of parental rights termination and adoption procedures. By contrast, the appellant here stood to lose custody of her three-year-old and six-year-old granddaughters, whom she had raised almost from birth and who, the court had found, were not adoptable.

Even more importantly, however, Delleisha and Jonique stood to lose the care and nurturance of their primary caretaker, the only blood relative with

whom they had had a consistent and comparatively stable relationship throughout their young lives. The decision to remove a dependent child from the only home she has known, with a relative caretaker who has assumed the role of de facto parent for several years, must not be made lightly. This is particularly true where, as here, the removal decision is made in the post-permanency planning stage of dependency proceedings in which it has been determined that reunification of a dependent child and his or her parents is no longer possible. At that point, " 'the focus shifts to the needs of the child for permanency and stability.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 [27 Cal.Rptr.2d 595, 867 P.2d 706], quoting *In re Marilyn H.* (1993) 5 Cal.4th 295, 309 [19 Cal.Rptr.2d 544, 851 P.2d 826]; *In re Richard C.* (1991) 231 Cal.App.3d 1487, 1499 [282 Cal.Rptr. 788] [overriding concern in postpermanency planning stage is to provide a stable permanent home in which the child can develop a lasting emotional attachment to his or her caretakers].) Thus, our holding applies with special force given the procedural posture of this case.

We reject the department's arguments that *In re Kieshia E.*, *supra*, which was decided after the juvenile court sustained the supplemental petition, requires that appellant be excluded from the "jurisdictional" phase of a section 387 hearing. Although the court stated that "the de facto parenthood doctrine never contemplated a nonparent's participation in that capacity at the *jurisdictional* stage of a dependency proceeding," it is clear in context that the court was referring to the original hearing on a section 300 petition. (6 Cal.4th at p. 79, italics in original.) The court's statement was, moreover, pure dictum. The issue of the de facto parent's right to participate in the jurisdictional hearing in that case was not raised because he was, in fact, allowed to appear and present evidence to contest the allegations of the section 300 petition and the contents of the social study. (6 Cal.4th at pp. 73, 79.)

At oral argument, the department voiced concern that a de facto parent should not be able to override the decision of a natural parent who chooses not to contest a supplemental petition alleging misconduct by the nonparent. To do so, according to the department, would be to "elevate the rights of the de facto parent over and above those of the natural parent." The department relies on language in *In re Kieshia E.*, *supra*, where our Supreme Court said, "[A]t bottom, it is the parent, not the outsider, who retains the essential and basic right to decide how to respond to the state's intervention." (6 Cal.4th at p. 79.)

The department's arguments—and the Supreme Court's observation—presuppose a natural parent who is on the scene, actively involved in the

child's life, and capable of making sound decisions about the child's best interests.[3] That is not this case. As far as we can determine from this record, Jonique's and Delleisha's mother had had only the most minimal involvement with her daughters. When the section 387 petition was filed, the statutory period for her to reunify with her children had long since expired. Appellant was the sole primary caretaker for the children throughout their lives. In these circumstances, we see no reason to allow appellant's daughter to override rights conferred upon appellant by statutes, rules of court, and case law by virtue of her status as a custodial relative and de facto parent.

Respondent also implies that, under the rule of *In re Kieshia E.*, the juvenile court erred from the outset by finding that appellant was the de facto parent of the minors. Any argument based on the holding of *In re Kieshia E.* is premature. In that case the juvenile court weighed conflicting evidence and concluded that a man who was found to have sexually molested the daughter of his domestic partner was nevertheless the "psychological parent" of the minor and, thus, merited recognition as the child's de facto parent for purposes of participating in the postjurisdictional stages of dependency proceedings. (6 Cal.4th at p. 74.)

The Court of Appeal affirmed the juvenile court's decision, but the minor sought and was granted review by the Supreme Court. After surveying the development of the de facto parenthood doctrine (*In re Kieshia E., supra,* 6 Cal.4th at pp. 75-78), the Supreme Court reversed, under the following limited holding: "All we decide today is that a nonparent who commits sexual or other serious physical abuse upon a child in his or her charge thereby abandons the function of care, affection, and psychological fulfillment essential to the role of a de facto parent. When a juvenile court has found that the nonparent committed such abuse, and has therefore deemed it necessary to make the victim a dependent of the court, the abuser is barred from intervening in the same proceeding under the de facto parent doctrine." (*Id.* at pp. 79-80.) *In re Kieshia E.* thus stands for the proposition that a de facto parent loses that status, and may be excluded from further participation in a dependency proceeding, once there is an adjudication that the minor is within the jurisdiction of the juvenile court because of the nonparental caretaker's harmful conduct. (*Id.* at p. 78.)

There was no such adjudication in this case, and there is no showing that appellant herself engaged in sexual or other serious physical abuse of her

---

[3]Indeed, the Supreme Court in *In re Kieshia E.* specifically stated that it was not deciding what procedural rights should be accorded a de facto parent in a "jurisdictional" hearing in a case where no parent is "directly involved" in the life of the dependent child. (6 Cal.4th at p. 79, fn. 8.)

granddaughters, or otherwise acted in "fundamental betrayal" of her role as de facto parent to the minors. (*In re Kieshia E.*, *supra*, 6 Cal.4th at p. 76.) There is, therefore, no basis for excluding appellant from participation in the jurisdictional phase of the section 387 hearing. (6 Cal.4th at pp. 78, 80.) It is, in fact, the purpose of that hearing to determine *whether* appellant is to some extent responsible for the alleged molestation of Delleisha. Further, it is not clear that *In re Kieshia E.* would require termination of de facto parent status for one who has not personally committed sexual or other serious physical abuse upon a dependent child. (See 6 Cal.4th at pp. 78-79.) In any event, any decision to exclude appellant from subsequent proceedings must be deferred pending completion of the contested hearing on the supplemental petition. (*Ibid.*)

B. *On Remand the Department Must Establish by a Preponderance of Admissible Evidence That the Placement With Appellant Has Not Been Effective in the Protection of the Minors.*

■ Having decided that the juvenile court erred in refusing to allow appellant to oppose the supplemental petition, we must decide whether the error was prejudicial. Although it may be a close case, we conclude that it was.

In this case, the juvenile court sustained the supplemental petition solely on the basis of "evidence" contained in the social worker's report prepared for the April 7, 1993 hearing. In relevant part, that report consisted of the social worker's vague references to hearsay statements by anonymous declarants: "*Reportedly*, Delleisha was sexually molested when her grand-mother, Sandra W[.], left her and Jonique in the care of a single man named Frank, who lives in North Oakland or Berkeley. The sexual molestation was made [*sic*] by a man named Keith, the nephew of Frank. In 1991, Ms. W[.] suspected that Jonique had been molested while in the care of her friend, Frank. Sexual abuse of Delleisha was suspected after Dr. James Carpenter made a medical diagnosis of venereal warts on July 28, 1992. Ms. W[.] denied having any knowledge of the possible sexual molester when inter-viewed by the Social Service Department on July 30, 1992. The Social Service Department *later learned* that Delleisha told Ms. W[.] about the molestation the day after it occurred. Dr. Carpenter prescribed a topical ointment for the warts which Ms. W[.] did not obtain between July and November, 1992. [¶] Jonique W[.] was removed from the care of Sandra W[.] after it *became known* that Ms. W[.] had not given the Social Service Department all information known about the sexual molestation of Delleisha [H.]. Jonique had been acting very sexual in her foster placement. On several occasions, she has assumed a coital position with her three-year-old foster

brother and has removed her underpants on a regular basis. Jonique was examined at the Children's Hospital Sexual Abuse Clinic on March 10, 1993. The examination results were not available for inclusion in this report." (Italics added.)

Generally speaking, the foregoing type of report is competent and admissible proof in a dependency proceeding (*In re Malinda S., supra*, 51 Cal.3d at p. 382), and must be considered by the juvenile court when filed by the responsible social worker (see *In re Eduardo A.* (1989) 209 Cal.App.3d 1038, 1044 [261 Cal.Rptr. 68]). "The fact that a social study is competent by itself to support a [jurisdictional] determination 'does not, however, give the court carte blanche to accept it in lieu of all other evidence. Nor does it leave the parties helpless to challenge the contents of the report.' " (*In re Malinda S., supra*, 51 Cal.3d at p. 382, fn. 13, quoting *Dahl* v. *Dahl* (1965) 237 Cal.App.2d 407, 413 [46 Cal.Rptr. 881].) Furthermore, reliance on such hearsay is subject to due process objections if opposing parties are not timely provided copies, given an opportunity to subpoena and examine the social worker and the person(s) whose hearsay statements are contained in the report, and permitted to introduce evidence by way of rebuttal. (*In re Malinda S., supra*, 51 Cal.3d at pp. 382-383, fn. 16; *Long* v. *Long, supra*, 251 Cal.App.2d at p. 736.)

In this case, the social worker's report makes out a rather compelling prima facie showing that the placement with appellant was ineffective in protecting the minors. (§ 387.) However, that showing was not subjected to even the most minimal adversarial testing. The party whose conduct was at issue—appellant—was not given an opportunity to object to the contents of the social worker's report, or to subpoena and examine the social worker or any of the other person(s) whose hearsay statements are contained therein. Indeed, subpoenaing the hearsay declarant(s) would have been extremely difficult since the source(s) of much of the critical information contained in the social worker's report are unidentified. Although the report identifies the physician who allegedly diagnosed Delleisha's venereal warts, the juvenile court's order denying appellant's request for a hearing effectively prevented her from subpoenaing the doctor or his records. The juvenile court also precluded appellant's own testimony, and prevented her from presenting other witnesses or evidence to refute the department's allegations. The one-sided presentation of evidence in this case was surely not the type of proceeding contemplated by section 387, or the California Rules of Court. We remand for a contested hearing in which the department must prove by a preponderance of admissible evidence that the factual allegations of the supplemental petition are true, and that the placement with appellant was not effective in the protection of the minors.

## III. Conclusion

For the foregoing reasons, we reverse the order of the juvenile court sustaining the supplemental petition, and remand for further proceedings consistent with this opinion. At the hearing on the supplemental petition, appellant shall be allowed to appear with her court-appointed counsel and to present evidence relevant to the issues framed by the petition. Appellant shall also be permitted to subpoena and cross-examine any witnesses on which the department relies to support its petition.

Kline, P. J., and Smith, J., concurred.