Filed 4/29/15  In re Angela V. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ANGELA V., A Person Coming Under the Juvenile Court Law. | B259064 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK99048) |
| Plaintiff and Respondent, | |
| v. | |
| SARA F., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Carlos E. Vasquez, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

13-year-old Angela V. was declared a dependent based on Juan V.'s (father) physical abuse of her. The court ordered Angela removed from father and released her to Sara F.'s (mother) care. One year later, the Department of Children and Family Services (Department) filed a supplemental petition under Welfare and Institutions Code[1] section 387[2] alleging that the home-of-parent order had not been effective in the protection or rehabilitation of Angela. The court sustained the allegation that mother "ha[d] limited abilities to provide appropriate parental care and supervision" and removed Angela from mother's custody.

Mother appeals and contends there was insufficient evidence that it was "necessary to remove placement from mother in order to protect Angela." We affirm on the grounds that substantial evidence supports the court's findings that the home-of-parent order was no longer effective at protecting Angela and she was at risk of harm if she remained in mother's physical custody.

### FACTUAL AND PROCEDURAL BACKGROUND

This family has a lengthy history with the Department. On ten separate occasions between 2004 and 2012, the Department received referrals alleging that mother and father abused and/or neglected their children.[3] The Department found that several of these allegations were "substantiated." In 2004, allegations of emotional abuse by father were substantiated and the parents agreed to participate in family preservation services. The family was still receiving those services in 2005 when allegations of physical abuse against mother were substantiated. In 2011, allegations of general neglect by mother and father were substantiated and the parents agreed to

---

[1]    All other statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]    Section 387 provides that the Department may file a supplemental petition seeking to remove a child from the physical custody of a parent and placing the child in foster care or an institution. (§ 387, subd. (a).)

[3]    Angela has a number of siblings who are not subjects of this appeal.

2

participate in family maintenance services. At some point, mother reported a history of domestic violence by father.

The family still had an open case with the Department on January 3, 2012 when Angela cut her wrist with a knife. Angela was twelve years old at the time. The Department received a referral alleging "caretaker absence/incapacity" as to both parents and found the allegation to be substantiated. On January 31, 2012, Angela used a razor blade to cut herself on her arms. She was hospitalized and then released to a group home based on mother's request that Angela "become stable prior to [] returning home."

In March 2012, mother divorced father. Angela returned to mother's care in July 2012 and saw father during weekly visits. The Department's social worker asked mother to obtain a restraining order against father in order to protect the family from father's "harassment" and "threats," but mother declined to do so.

In October 2012, father "grabbed [Angela] by the hair, pushed her and socked her on the back with a close[d] fist." In February 2013, father slapped Angela in the face. On March 1, 2013, the Department received a referral about father's physical abuse and interviewed the family. Mother told the social worker that father was both physically and verbally abusive to Angela. Angela's brother said father had called Angela " 'a slut, stupid, worthless and no good for nothing.' "

On March 7, 2013, the parents agreed to a "safety plan": father would have monitored visits with Angela for 30 days, and during that time mother would seek an order from the family court limiting father to monitored visits. On March 23, 2013, mother went to family court and asked that father's visits be monitored for only one month. The family court issued an order that father's visits be monitored until April 12, 2013. However, on March 29, 2013, mother became upset at Angela and asked father to come get Angela in violation of the family court order. At the social worker's urging, mother then obtained a long-term restraining order against father.

On April 17, 2013, the Department filed a petition alleging that father's physical abuse of Angela placed her at risk and that mother had failed to protect the child.[4]  In the detention report, the Department noted that Angela had been diagnosed with Oppositional Defiant Disorder with "borderline personality traits" and had been prescribed psychotropic medications.  The juvenile court detained Angela and released her to mother's care.

In the Jurisdiction/Disposition Report, the Department reported that Angela was participating in individual counseling, was taking psychotropic medications, and had been hospitalized three times in psychiatric facilities for cutting herself or threatening to hurt herself.  On June 4, 2013, the court sustained the allegation that father's physical abuse of Angela placed her at risk of harm.  The court dismissed the other counts in the petition.  Angela was now 13 years old, and was placed in mother's home.  Father was granted monitored visits.  Angela was ordered to participate in therapy and did so several times a week.

On November 8, 2013, Angela was hospitalized after threatening to commit suicide.  She was discharged a few days later and released to mother's care.  At the six-month review hearing on November 25, 2013, the court ordered continued jurisdiction over Angela.

In April 2014, Angela ran away from mother's home three times during a period of two weeks.  On April 25, 2014, mother reported to the police that Angela had punched her in the shoulder and threatened to kill her.  Angela told the police that mother had hit her, and mother acknowledged she had slapped Angela.  Angela was arrested, charged with battery, and detained at a juvenile detention center until May 12, 2014 at which point she was released to shelter care with mother's consent.  In the probation report, mother was reported to be "fearful and hesitant for [Angela] to reside with her at home."  Mother also told the social worker that she "want[ed] [Angela] placed somewhere where she'll be safe and she can't leave."

---

**4**      One of Angela's brothers also was a subject of the petition; however, we do not address his case as it is not before us on appeal.

In May 2014, the Department filed a supplemental petition under section 387 alleging that mother had slapped and pushed Angela, and had "limited abilities to provide appropriate parental care and supervision of the child due to the child's behavioral problems." In the Detention Report, the Department reported that Angela was "affiliated" with a gang, was using and selling drugs, and had admitted to engaging in prostitution. Mother had taken steps to address Angela's dangerous behaviors: when mother discovered marijuana in Angela's possession, mother called the police; when Angela got "involved [] with human trafficking," mother "put extra locks on the doors to prevent [] Angela from leaving at night"; and when Angela skipped school, mother went "out in the streets looking for [Angela]."

In advance of the detention hearing, mother said she wanted Angela to return home and believed that she would "be able to control [Angela's] behavior . . . because she feels supported and will have the help of probation to keep [Angela] in line." At the May 16, 2014 hearing, the court detained Angela from mother's care.

In June 2014, mother asked the Department if Angela could be placed in a "lockdown facility" where she could receive "psychiatric help." Mother said that although "she wants [] Angela back with her[,] she wants [] Angela to be stable as [] Angela has a disease that needs rehabilitation." Mother said that "she and [] father have done all that they know but all this has not helped [] Angela." Mother further said that she "need[ed] help in disciplining the child" because "the help that [] Angela needs is not in her hands" and "Angela is out of control."

On July 14, 2014, Angela was declared a ward in the separate juvenile case and she remained detained at juvenile hall. On July 21, 2014, the Department reported that mother "want[ed] [] Angela to be [in a] stable [placement] possibly in a camp/boot camp where there is discipline and someone is watching [] Angela so she takes her medication and does not go AWOL." On July 24, 2014, Angela was placed at a juvenile probation camp for a stay of three months.

At the jurisdictional/dispositional hearing in the present case, the court sustained the allegation that mother had "limited abilities to provide appropriate parental care and

5

supervision of [Angela]" and struck the allegation that mother's violent behavior towards Angela placed Angela at risk of harm. With respect to disposition, the court removed Angela from mother's care on the grounds that "substantial danger exists to the physical health of [Angela] and/or [Angela] is suffering severe emotional damage, and there is no reasonable means to protect [her] without removal from mother's physical custody." The court gave the Department discretion to release Angela to her parents when she was released from custody. Mother timely appealed.

## CONTENTIONS

Mother contends the court erred in sustaining the section 387 petition and removing Angela from her care because there was insufficient evidence that the home-of-parent order was ineffective at protecting Angela.

## DISCUSSION

1.    *Applicable Law*

Section 387 provides that the Department may file a supplemental petition seeking to remove a child from the physical custody of a parent and placing the child in foster care or an institution. (§ 387, subd. (a).) The petition must contain facts showing that the previous disposition has not "been effective in the rehabilitation or protection of the child." (§ 387, subd. (b).) A section 387 hearing is bifurcated into "(1) an adjudicatory hearing on the merits of the allegations in the petition and (2) a disposition hearing on the need for the removal of the [children] from [their] current level of placement." (*In re Javier G.* (2006) 137 Cal.App.4th 453, 460.)

"[T]he 'jurisdictional' phase of the section 387 hearing is a factfinding proceeding to determine whether the allegations of the supplemental petition are true. [Citations.] The ultimate 'jurisdictional fact' necessary to modify a previous placement with a parent or relative is that the previous disposition has not been effective in the protection of the minor. [Citations.]" (*In re Jonique W.* (1994) 26 Cal.App.4th 685, 691.) "If the court finds the allegations are true, it conducts a dispositional hearing to determine whether removing custody is appropriate. [Citations.]" (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161.)

6

At the section 387 disposition hearing, the court applies the same procedures that govern disposition hearings on a section 300 petition. (Cal. Rules of Court, rule 5.565, subd. (e)(2).) The standard for removal on a supplemental petition is clear and convincing evidence: the Department must show "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor" if left in parental custody "and there are no reasonable means by which the minor's physical health can be protected without removing the minor from [parental] physical custody." (§ 361, subd. (c)(1); *In re Paul E.* (1995) 39 Cal.App.4th 996, 1000-1003.)

"A removal order is proper if it is based on proof of: (1) parental inability to provide proper care for the minor; and (2) potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citation.]" (*In re T.W., supra,* 214 Cal.App.4th at p. 1163.)

2.      *The Court Did Not Err in Sustaining the Section 387 Petition and Removing Angela*

At the jurisdictional phase of the hearing, the court concluded that the home-of-parent order had not been effective in protecting Angela based on the finding that mother "ha[d] limited abilities to provide appropriate parental care and supervision of [Angela]." The court then concluded that removal was necessary because there was a substantial danger to Angela if left in mother's care, and there were no reasonable means to protect Angela's physical health without removal.

Mother contends that the court erred in sustaining the jurisdictional finding and removing Angela because the record showed that mother was "effective at addressing the protective issues" and mother "was clear that she wanted Angela to be allowed to return home." Mother's position on appeal is contrary to her own statements to the Department below. When the section 387 petition was filed, mother initially said she would "be able to control [Angela's] behavior" if Angela returned home. But later, mother repeatedly acknowledged she had not been able to provide Angela with the help

7

she needed, and asked that Angela be placed in a "lockdown facility" or in a "boot camp."

Mother also argues that the evidence showed mother "acted appropriately in response to [Angela's] negative behavior." However, the record shows that mother's efforts to address Angela's problems did not prevent Angela from continuing to engage in dangerous behaviors. While in mother's care, Angela used and sold drugs, participated in gang activity, engaged in acts of prostitution, ran away from home, missed school, and punched and threatened to kill mother. Even the Department's provision of services to the family while Angela lived with mother was not sufficient to ensure Angela's protection. Moreover, there was evidence that mother did not always act appropriately with Angela: mother admitted she had slapped Angela. This constituted substantial evidence in support of the court's findings that Angela's placement with mother was not effective in protecting Angela, and that removal was necessary to protect her.

## *DISPOSITION*

The orders are affirmed.

## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

EGERTON, J.[*]

WE CONCUR:

EDMON, P. J.

KITCHING, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.