Filed 5/2/25  In re S.S. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| In re S.S. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E083909 |
| Plaintiff and Respondent, | (Super. Ct. Nos. J293614, J293615, J293616, J293617) |
| v. | OPINION |
| R.S., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Joseph R. Barrell, Deputy County Counsel, for Plaintiff and Respondent.

1

# I.

# INTRODUCTION

Defendant and appellant, R.S. (Father) appeals a juvenile court order adopting a permanent plan of legal guardianship over I., N., R., and S. (the children), and dismissing the juvenile dependency petitions at the Welfare and Institutions Code section 366.26[1] hearing.[2] Father objects to the juvenile court considering during the section 366.26 hearing an inflammatory statement ("dangerous-activities language") in the section 366.26 hearing report and not striking it from the report. He requests this court to reverse the section 366.26 order and strike the dangerous-activities language from the section 366.26 hearing report.

Father argues his due process rights were violated during the section 366.26 hearing because the juvenile court considered the dangerous-activities language and permitted inappropriate attestations regarding the language by county counsel. Father further contends that the juvenile court's failure to strike the dangerous-activities language from the section 366.26 report was prejudicial error.

We affirm the section 366.26 order entered on May 2, 2024, and reject Father's request to strike the dangerous-activities language in the section 366.26 hearing report.

---

[1] Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

[2] Although CFS filed separate juvenile dependency petitions simultaneously on behalf of each of the children (I., N., R., and S.), we refer to the multiple petitions as a single petition, because the petitions were heard and ruled on at the same time, with essentially the same rulings for all relevant intents and purposes.

FACTS AND PROCEDURAL BACKGROUND

Father is the biological father of N., R., and S. (born in 2014, 2015, & 2019, respectively), and the step-father of I. (born in 2009). I. shares the same mother as that of N., R., and S. The juvenile court found that Father was the presumed father of the children, I., N., R., and S.

A. *Detention*

On June 4, 2022, San Bernardino County Children and Family Services (CFS) received a referral that Z. (10 years old), the children's half-sister by a different biological mother, suffered a significant burn to her lower left foot and leg.[3] Z. reported her injuries were self-inflicted from burning herself in her bathwater. Z. also had multiple superficial scratches, some of which were healed, fresh, or scarred. Z. declined to explain these injuries. At the time of the burn incident, Z. was living in the home of Father and Z.'s step-mother, referred to herein as Mother. Mother and Father reported Z.'s burn was self-inflicted and that Z. had a history of self-harm, mental health issues, and urinating on herself every day. Father reported that Z. told him that Mother was abusing her but he did not believe it.

On June 7, 2022, Z. was removed from Father's custody and taken into the custody of CFS in a separate juvenile dependency case. After CFS investigated the burn

---

[3] Z. is not a party to the instant case because she has a different biological mother than the other children.

incident and reviewed the medical reports, the children were removed from Mother and Father on June 22, 2022. CFS filed petitions on behalf of the children under section 300, subdivisions (b) (failure to protect) and (j) (abuse of sibling), alleging the children's sibling, Z., suffered significant burns and was removed from Father's custody as a result of severe neglect. This allegedly placed the children at risk of harm and neglect.

At the detention hearing, the juvenile court ordered the children removed from Mother and Father. Mother told the court that Father was the biological father of N., R., and S., and I. had a different father, whom I. had seen only once in the last seven years. Later, the court found Father was the presumed Father of all of the children.

B. *Jurisdiction and Disposition Hearing*

In December 2022, CFS filed an amended complaint, which became the operative complaint. The new allegations under section 300, subdivisions (a) and (b) stated that, while in the care of Father and Mother, the children or their siblings were physically abused. It was also alleged under subdivision (b), that on June 3, 2022, Z. suffered significant burns to her left foot, placing the children at risk of future harm. The amended petition further alleged under section 300, subdivision (j) that one of Father's children was removed from his custody for severe neglect, placing the other siblings at substantial risk of similar abuse and neglect.

CFS reported Father was engaging in services, making progress, and had a good relationship with the children. Father's therapist reported he was doing well in counseling. At the contested jurisdiction hearing in January 2023, the juvenile court

4

found true the allegations and declared the children dependents of the court. During the disposition hearing, the court found that Father was no longer living with the abuser, Mother, and he was making significant progress. The children wanted to reunify. The court granted Father reunification services and visitation. The court ordered reunification services for Mother bypassed.

In May 2023, Father filed a section 388 petition requesting a transition plan to return the children to his home and unsupervised visits. CFS filed a response stating concern that Father had not processed the trauma experienced by Z. and I. Father was reluctant to believe Mother injured Z. CFS therefore questioned his protective capacity. The children reported that their visits with Father went well and they wanted to go home to their parents. During the initial hearing on Father's section 388 petition in June 2023, minors' counsel stated that she became aware that Father, relatives, and caregivers were allowing the children to have unauthorized contact with Mother. Father responded that the contacts were because of a misunderstanding. The court continued the section 388 petition hearing to the date of the section 366.21, subdivision (e) hearing.

CFS reported in its review report filed in July 2023, that Mother remained incarcerated for child abuse, and the children were generally doing well. Father reenrolled in therapy and parenting classes. The children were enjoying visits with him, although CFS was concerned about Father's inability to accept that Mother abused Z. In July 2023, over the objections of minors' counsel and CFS, the juvenile court ordered unsupervised visits for Father once a week for four hours. The section 366.26 hearing

5

and Father's section 388 petition hearing were continued. At the review hearing in October 2023, the juvenile court terminated reunification services and ordered continuation of Father's unsupervised visits once a week for four hours. The court denied Father's section 388 petition.

C. *Section 366.26 Report and Hearing*

CFS social worker Mr. Roman reported in his section 366.26 hearing report filed in March 2024 that he was assigned the case in December 2023.[4] Roman contacted the children and MA. Father reportedly had no contact with Roman, CFS, or the children. The biological father of I. reportedly could not be located while Roman was assigned the case.

Roman reported that each of the children told him they were happy living with MA and their siblings, and would be happy to have MA appointed as their guardian. The four children stated that they believed they would not be safe in Father's home, and they did not want any contact with Mother. Roman concluded in the section 366.26 report that the children felt "the support and safety that the children were lacking before they were removed from the parents." CFS noted that "[t]he emotional and psychological relationship between the child and the current caregiver(s) is strong and removal of child would be seriously detrimental to child's emotional well-being." Roman further concluded it was unlikely the children would be returned to the parents' care.

---

[4] The section 366.26 hearing report erroneously states Roman was assigned the case in December 2024.

MA was willing to raise the children as their legal guardian, and CFS concluded it was extremely unlikely that CFS could place the four children together in the same adoptive home. Roman recommended that MA become the legal guardian of the four children. Roman reported that MA was unable to adopt the children "due to exceptional circumstances, . . . but [was] willing to keep [the children]. Removal of the children . . . would create an atmosphere detrimental to children's emotional wellbeing. Also there would be a substantial interference with a child's sibling relationship should the children be separated . . . ." Roman also reported that the relationship the children had with Father would be significantly impacted if the children were not placed together. MA agreed to allow Father to visit the children as long as visits were supervised and the children chose to visit with him.

Roman further reported that Father "has been consistent with visitation but continues to engage in activities that are dangerous with the wellbeing of the children" (referred to herein as the "dangerous-activities language"). CFS therefore recommended guardianship by MA for the children and visitation for Father.

During the section 366.26 hearing on May 2, 2024, the juvenile court admitted into evidence the CFS's reports, including the section 366.26 hearing report. Father and Mother were present at the hearing. Father, through his attorney, Mr. Roa, objected to legal guardianship, and requested that if the court ordered it, that Father's visitation remain the same: four hours of unsupervised visitation, once a week. Mother, through

her attorney, also objected to legal guardianship but said she had no affirmative evidence. Minors' counsel submitted on CFS's recommendations, including legal guardianship.

CFS's attorney, Ms. Edmond, requested a moment to talk to the social worker on the phone. After doing so, Edmond informed the court that the social worker was okay with continuing the unsupervised visitation but did not agree to overnight visits. The court stated that it would correct its order to state Father was authorized to have four hours of unsupervised visitation with the children once a week, but no overnights. Minors' counsel objected, adding that he was confused by the dangerous-activities language in the .26 report that stated: Father "has been consistent with visitation but continues to engage in activities that are dangerous with the wellbeing of the children."

The court asked Edmond to ask Roman what he meant by his statement in the section 366.26 report that Father continues to engage in dangerous activities. Edmond called Roman on the phone and, after talking to him, explained to the court that Roman was saying that the children reported that Father was talking about a new girlfriend. Edmond further stated that she asked the children if Father was bringing inappropriate or unauthorized people to the visits, and the children said "no." Edmond told the court she also asked the social worker if the children indicated that they preferred supervised visits or were afraid or uncomfortable during any unsupervised visits, and they said they were not.

The juvenile court responded, "Why did the worker put 'dangerous activities?'" Edmond said, "Because he did not know what the new information was about the

8

girlfriend." The court responded, "That's quite a descriptor." Edmond explained that "[b]ased on the children's concerns about the [F]ather saying he had a girlfriend or talking about someone else coming around, the social worker was concerned that Father might bring someone that was not—that he didn't know about or that might present a risk to the children."

The court said, "That's a significant word choice." Father's attorney agreed and objected to "that word's inclusion in the report." The court then ordered that, over minors' counsel's objection, Father was authorized to have unsupervised visitation once a week for four hours. The court also granted the petition for legal guardianship, finding it was appropriate and that it was in the children's best interests to close the case.

Father filed a notice of appeal of the May 2, 2024, section 366.26 hearing order.

III.

DISCUSSION

Father acknowledges in his appellate opening brief that he "is not contesting the selection of guardianship and he was given the visitation he requested at trial." Father instead argues he was deprived of his due process right to be heard during the section 366.26 hearing. Specifically, "the process was tainted by the court's acceptance of attestations as evidence and its failure to strike inflammatory statements unsupported by the facts from the record." Father argues the attestations by CFS's attorney regarding inflammatory statements in the section 366.26 report were not by a witness under oath

9

and, therefore, should not have been permitted or considered by the juvenile court during the section 366.26 hearing.

Father requests this court to strike the statement in the section 366.26 report that Father "continues to engage in activities that are dangerous with the wellbeing of the children." He argues this statement might impact his future attempts to achieve custody and increase visitation. We conclude the court did not abuse its discretion by not striking the dangerous activities language from the section 366.26 report. In addition, we conclude that allowing CFS's attorney's attestations regarding the language did not violate Father's due process rights. We further conclude that Father forfeited his objections, and there was no prejudicial error, as discussed below.

A. *Forfeiture*

Regardless of whether there were due process violations or errors in not ordering the dangerous-activities language stricken from the section 366.26 report, Father forfeited these objections on appeal. Although Father's attorney, Roa, objected during the section 366.26 hearing to the dangerous-activities language in the section 366.26 report, he did not object when the court entered the report into evidence.

It was not until near the end of the hearing, after minors' counsel objected to the dangerous-activities language, that the court responded that the language "'dangerous activities,'" was "a significant word choice." Roa thus objected to "that word's inclusion in the report." Roa did not state any specific grounds or request the court to strike the language from the report and did not press the juvenile court for a ruling on his objection.

10

In addition, Roa did not request a continuance so that Father could call Roman as a witness for the purpose of clarifying his reasons for making the statement. Roa also did not object to CFS's attorney's attestations during the section 366.26 hearing regarding the dangerous activities language and did not object to counsel for CFS, Edmond, calling Roman on the phone during the section 366.26 hearing to inquire regarding the language. Roa did not object to Edmond relaying to the court what Roman had told her regarding the language.

Father, therefore, forfeited his objections on appeal by not properly raising them during the section 366.26 hearing. (*People v. Hernandez* (1999) 71 Cal.App.4th 417, 425 [defendant could not argue on appeal that statements lacked sufficient indicia of reliability because "he failed to object to the statements below on this ground"; (*People v. Lewis* (2008) 43 Cal.4th 415, 481 "[f]ailure to press for a ruling on a motion to exclude evidence forfeits appellate review of the claim because such failure deprives the trial court of the opportunity to correct potential error in the first instance. [Citation.]"; *People v. Morris* (1991) 53 Cal.3d 152, 195 [defendant forfeited appellate challenge to admission of testimony by failing "to press for" a ruling "until he obtained one"].) And, as discussed below, even if not forfeited, we reject Father's objections on the merits.

B. *Father's Due Process Challenge to Attestations During Section 366.26 Hearing*

Father contends the juvenile court violated his due process rights during the section 366.26 hearing by allowing social worker Roman's explanation of the dangerous-activity language. Father asserts that the juvenile court erred in allowing CFS's attorney

11

to tell the court what Roman said about the dangerous-activities language in the section 366.26 report.  Father argues that such due process violations were prejudicial to any future attempts to obtain an increase in visitation or custody of the children.

Impairment of the fundamental right of parenting may be disturbed only in extreme cases when persons' acts are incompatible with parenthood.  (*In re A.V.* (2021) 73 Cal.App.5th 949, 956-957.)  Therefore, strict adherence to procedural due process is required when impairing parenting rights.  (*Ibid*.)  "In juvenile dependency, '[d]ue process includes the right to be heard, adduce testimony from witnesses, and to cross-examine and confront witnesses' [citation]; specifically, due process 'focuses on [a parent's] right to notice and the right to be heard' before a child is removed from his or her care [citation]."  (*Ibid*.; see also *J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 536.)

"But due process does not require 'full-fledged cross-examination.' [Citation.] Rather, all that is required is "'"'that the procedure adopted comport with fundamental principles of fairness and decency.'"'" [Citation.]  Due process is a flexible concept that weighs 'any possible hardship to the parent [against] the state's legitimate interest in providing an expedited proceeding to resolve the child's status without further delay.' [Citations.]"  (*J.H. v. Superior Court*, *supra*, 20 Cal.App.5th at p. 536; see also *In re Vanessa M.* (2006) 138 Cal.App.4th 1121, 1129-1130.)  Where Father's visitation and custody are at issue, he is entitled to present oral testimony as well as confront and cross-examine the witnesses against them.  (*In re Vanessa M.*, *supra*, 138 Cal.App.4th at pp.

12

1129-1130.)  We review for abuse of discretion Father's due process challenge.  (*In re Josiah S.* (2002) 102 Cal.App.4th 403, 412.)

Here, Father was not deprived of his "'right to be heard, adduce testimony from witnesses, and to cross-examine and confront witnesses.'"  (*A.V.*, *supra*, 73 Cal.App.5th at p. 957.)  Father was timely provided with the section 366.26 report and notice of the section 366.26 hearing.  He was also personally present at the section 366.26 hearing and was represented by counsel.  Father thus had the opportunity to present evidence refuting adverse statements in the section 366.26 report, including the statement that Father "continues to engage in activities that are dangerous with the wellbeing of the children."  Father could have subpoenaed the author of the section 366.26 report, Roman, or other witnesses to testify regarding the dangerous activity language.  Father also could have requested a continuance to do so.  Father could have then cross-examined and confronted Roman.

Father argues his case is similar to *In re Matthew P.* (1999) 71 Cal.App.4th 841 (*Matthew P.*), *In re Jonique W.* (1994) 26 Cal.App.4th 685 (*Jonique W.*), and *In re Crystal J.* (1993) 12 Cal.App.4th 407 (*Crystal J.*), because he had no opportunity to cross-examine Roman after the juvenile court asked questions about the basis for the dangerous-activities language.  Father also argues he did not know that the court would be calling Roman for questioning, and Father did not have an opportunity to question him.  Father asserts he was not told before the .26 hearing that county counsel would call and ask Roman questions over the phone during the .26 hearing.

13

Father's reliance on *Matthew P.*, *supra*, 71 Cal.App.4th 841, *Jonique W.*, *supra*, 26 Cal.App.4th 685, and *Crystal J.*, *supra*, 12 Cal.App.4th 407, is misplaced. In *Matthew P.*, de facto (DF) parents objected to the social worker's reports unless the DF parents were permitted to cross-examine the author of the reports during the hearing on a section 388 petition. The juvenile court overruled the objection and denied cross-examination on the ground the juvenile court had discretion to hear section 388 petitions without testimony.

The court in *Matthew P.* reversed the order denying the section 388 petition, and directed the court to hold a new hearing, allowing the DF parents to cross-examine the social workers and present evidence. (*Matthew P.*, *supra*, 71 Cal.App.4th at p. 851.) The court held that the juvenile court's admission of the social service reports without allowing cross-examination of the authors of the reports denied the DF parents their due process rights. The *Matthew P.* court concluded that the DF parents were entitled to a full hearing, including cross-examination of the social workers who wrote the reports entered into evidence. (*Ibid*.) Here, Father did not object to the CFS .26 report or request the court to allow the social worker to testify. Furthermore, the juvenile court conducted a full evidentiary hearing wherein Father had the opportunity to call witnesses and present evidence.

*Jonique W.*, *supra*, 26 Cal.App.4th 685, is likewise distinguishable. In *Jonique W.*, the social services department filed supplemental petitions under section 387, alleging that the grandmother had been ineffective in protecting the minors. The juvenile court denied the grandmother's request for a contested hearing and sustained the supplemental

14

petition based on the social worker's report. The court of appeal reversed and remanded for further proceedings, holding that the denial of a contested hearing was prejudicial error. (*Jonique W.*, *supra*, at p. 694.) Here, Father received a contested evidentiary section 366.26 hearing, in which he had the opportunity to present evidence, including calling and cross-examining witnesses.

*Crystal J.*, *supra*, 12 Cal.App.4th 407 is also not on point. In *Crystal J.*, when terminating parental rights, the juvenile court relied on several assessment reports during the section 366.26 hearing. The court of appeal affirmed, holding that, by failing to object to the assessment reports during the hearing, the mother waived her objections to the reports. The court also held that the asserted deficiencies in the reports did not amount to a denial of due process so as to enable the mother to avoid the waiver. The *Crystal J.* court held that, although the reports were deficient in some respects, the deficiencies were insignificant, and the totality of the evidence supported the juvenile court's findings and judgment. (*Id*. at p. 413.) *Crystal J.* does not support the proposition here that Father's due process rights were violated based on a lack of notice and an opportunity to cross-examine the social worker during the section 366.26 hearing.

We conclude the section 366.26 hearing proceedings comported with fundamental principles of fairness and decency, and therefore, Father's due process rights to be heard, adduce testimony from witnesses, and cross-examine witnesses regarding the dangerous-activities language were not violated.

C. *Striking the Dangerous-Activities Language*

We also reject Father's contention that the juvenile court abused its discretion by not striking the dangerous activities language in the section 366.26 report. Father requests this court to order that the dangerous-activities language be completely stricken from the record because the language is unsupported by any evidence, is inflammatory, and may prejudice his future efforts to increase visitation or obtain child custody. We conclude that such an order is inappropriate and unwarranted.

Although Father did not state any grounds in the juvenile court for his objection to the dangerous-activity language in the Welfare and Institutions Code section 366.26 report, he now argues on appeal that the language should have been stricken as inflammatory under Evidence Code section 352. That statute provides courts with discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create a substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

"The weighing process under [Evidence Code] section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules. [Citations.] We will not overturn or disturb a trial court's exercise of its discretion under [Evidence Code] section 352 in the absence of manifest abuse, upon a finding that its decision was palpably arbitrary, capricious and patently absurd. [Citations.]" (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314;

16

*Butler v. LeBouf* (2016) 248 Cal.App.4th 198, 207.) A trial court's Evidence Code section 352 ruling is reviewed for abuse of discretion. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446-447.)

Here, the juvenile court did not abuse its discretion by not striking the language from the section 366.26 report. During the section 366.26 hearing, CFS's attorney, Edmond, explained why the language was in the report after calling the social worker, Roman, who wrote the report. Neither Father nor the other parties present at the hearing objected to Edmond providing the court with the information provided by Roman regarding the dangerous activities language, and neither Father nor any of the other parties objected to this information or requested Roman to testify under oath to the information provided.

Edmond explained that Roman included the language because the children reported that Father said he had a new girlfriend. Roman was concerned that the girlfriend might be present during the unsupervised visits, and Roman did not have any information about her. Therefore, Roman included the language in the report because he did not know if the girlfriend presented a risk to the children. While the statement in the .26 report may have been excessive and lacked sufficient foundation, it was not an unreasonable exercise of discretion for the court not to strike the language sua sponte, in the absence of any request to do so.

Even assuming the probative value of the language was minimal, because of the lack of facts in the report providing a foundation for the language, the probability that its

admission would create a substantial danger of undue prejudice during the section 366.26 hearing was also minimal. The dangerous-activities language was presented to a judge who was capable of evaluating the tenuous and unsupported nature of the statement, such that it is unlikely that the court gave much, if any, weight to the language. (Evid. Code, § 352.) This is apparent from the fact that the juvenile court gave Father what he had requested at the hearing: ordering guardianship, rather than adoption, and continuing his weekly unsupervised visitation once a week for four hours.

Furthermore, even if the juvenile court abused its discretion in considering the dangerous-activities language and in not sua sponte striking it from the Welfare and Institutions Code section 366.26 report, there was no substantial danger of prejudice under Evidence Code section 352 for the reasons just stated. (Evid. Code, § 352.) It is highly unlikely that the juvenile court's section 366.26 hearing orders would have been any different had the language been stricken.

In general, "the application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution, and thus we review allegations of error under the 'reasonable probability' standard of *Watson*." (*People v. Marks* (2003) 31 Cal.4th 197, 227; see also *People v. Watson* (1956) 46 Cal.2d 818, 836.) . . . Under the *Watson* standard, prejudicial error exists where it is "'reasonably probable'" that a result more favorable to the appealing party would have been reached in the absence of error. (*People v. Harris* (1998) 60 Cal.App.4th 727, 741.) Even under the federal standard of harmless error beyond a reasonable doubt, which applies to errors of federal

18

constitutional dimension, there was no prejudicial error. (*In re Vanessa M.*, *supra*, 138 Cal.App.4th at p. 1132; see also *In re Stacy T.* (1997) 52 Cal.App.4th 1415, 1426 [multiple due process violations]; *In re Dolly D.* (1995) 41 Cal.App.4th 440, 446 [deprivation of right to confront and cross-examine witnesses].)

Father argues he is prejudiced by the dangerous-activity language remaining in the section 366.26 report because it could negatively affect any future efforts to increase his visitation and obtain custody. Although the guardianship and visitation orders at the section 366.26 hearing are considered permanent, they can be modified upon a showing that doing so is in the children's best interests, in which case the court likely will consider anew whether Father's current situation and whether his activities are dangerous to the children. (§§ 362.4, 366.3, 366.4; *In re D.R.* (2007) 155 Cal.App.4th 480, 486-487; *In re Heraclio A.* (1996) 42 Cal.App.4th 569, 574-576.) Father's contention that he will be prejudiced in the future by the brief dangerous-activities language in the .26 report is highly speculative. In addition, Father likely would have the opportunity to disprove the language and show changed circumstances in the event he requests a change in the visitation or guardianship orders. Furthermore, it is not likely a court in the future would give the language much credence or weight, particularly if Father provides the court with the recorded courtroom discussion during the section 366.26 hearing regarding the meaning of the language.

Based on the totality of the circumstances, we conclude that the juvenile court's failure to strike the dangerous-activities language from the section 366.26 report does not constitute prejudicial error.

IV.

DISPOSITION

The section 366.26 hearing order entered on May 2, 2024, is affirmed.  Father's request to strike the dangerous-activities language in the section 366.26 hearing report filed on March 11, 2024, is denied for the reasons stated in this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

McKINSTER

Acting P. J.

FIELDS

J.

20