Filed 12/5/23  In re S.J. CA4/2
See Dissenting Opinion

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.J., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  K.J. et al.,  Defendants and Appellants. | E081498  (Super.Ct.No. J268770)  OPINION |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant K.J.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant A.W.

1

Tom Bunton, County Counsel, David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

## I.

## INTRODUCTION

K.J. (Father) and A.W. (Mother) appeal from the juvenile court's order terminating parental rights as to their now 10-year-old daughter S.J.[1] The parents argue that the juvenile court and the San Bernardino County Children and Family Services (CFS) failed to discharge its duty of initial and further inquiry under state law implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.), and therefore substantial evidence did not support the court's finding that ICWA did not apply.[2] For the reasons explained, we affirm the order terminating parental rights.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of CFS in December 2016 due to allegations relating to physical abuse of S.J.'s sibling J.J. by Mother's boyfriend. Due to the concerns in the home, CFS obtained a warrant and detained S.J. and her siblings.

---

[1] S.J.'s siblings (J.J. and K.J.) are not subjects to this appeal.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

On December 20, 2016, CFS filed Welfare and Institutions Code[3] section 300 petitions on behalf of S.J. and her siblings. In the Judicial Council ICWA-010(A) inquiry form attached to the petitions, the social worker checked the box that stated, "The child has no known Indian ancestry." Mother filed a Judicial Council ICWA-020 Parental Notification of Indian Status form (ICWA-020 form) indicating that she had no Indian ancestry.

The detention hearing was held on December 21, 2016. Mother was present in court, but Father was not. The juvenile court inquired of Mother whether she had Native American ancestry, and Mother replied, "No." The court formally detained S.J. and her siblings from parental custody and set the matter for a jurisdictional/dispositional hearing.

Father's whereabouts remained unknown, and Mother failed to appear for her prescheduled jurisdictional/dispositional interview. Mother was generally uncooperative during CFS's investigation of the allegations and information concerning her family and background. It was reported that there were no known relatives to consider for placement of the children.

In January 2017, Father filed an ICWA-020 form indicating that he had no known Indian ancestry.

On January 11, 2017, an initial combined jurisdictional/dispositional hearing was held. Mother and Father were present. The juvenile court noted that it was Father's first appearance in the matter and inquired of Father of his Native American heritage. Father

---

[3] All future statutory references are to the Welfare and Institutions Code.

denied having any Indian ancestry. At the hearing, Mother's counsel indicated that contact information was provided for a maternal aunt, R.D. The court set the matter for a contested hearing.

At a hearing on March 7, 2017, Mother's counsel indicated that she had provided a list of relatives to CFS to be assessed for placement of the children. The juvenile court ordered CFS to assess the relative homes and place the children with a relative upon completion of the assessment and approval.

By March 2017, the children had been placed together in foster care while assessment of the maternal aunt was pending. The paternal grandmother was supervising Father's visits.

At the jurisdictional/dispositional hearing on March 15, 2017, after the parents waived their rights, the juvenile court found true some of the allegations in the petitions and dismissed some of the others, declared the children dependents of the court, and removed them from parental custody. The parents were provided with reunification services.

By the six-month review hearing in September 2017, Mother had completed her case plan components and was granted transitional overnight visits with the children. However, there were concerns that Mother was not following visitation rules and allowing unauthorized third parties (allegedly Mother's boyfriend who had physically abused S.J.'s sibling and was the father of Mother's fourth child) to be present during her visitation. In addition, Mother had given birth to her fourth child but claimed that the

4

child's father took the child away and that his whereabouts were unknown. Mother's overnight visits were suspended and CFS recommended that Mother's visits be supervised due to the concerns. The court granted CFS's request. Father was not compliant with his case plan services.

Mother stated that she had no relatives appropriate for placement of the children. CFS noted that Mother had worked with the social worker to build a community network that included her aunt and her children's caregiver. The social worker had met with the paternal grandmother and a paternal aunt and had engaged in a Child and Family Team meeting. The paternal grandmother and paternal aunt had begun the assessment process for relative placement but failed to complete the assessment. CFS reported that ICWA did not apply.

A contested six-month hearing was held on December 4, 2017. Mother sought return of the children to her care. Following testimony and argument by counsel, the juvenile court maintained S.J. and her siblings in out-of-home care, provided the parents with additional reunification services, and set the matter for a 12-month review hearing.

By the 12-month review hearing, CFS recommended services be terminated and a section 366.26 hearing be set to establish a permanent plan for the children. CFS reported that ICWA did not apply. S.J. and her sibling J.J. remained in the foster home of Ms. B. Mother had listed a number of relatives as possible placement resources. Assessments of the paternal grandmother and the paternal aunt had lapsed. The children enjoyed their visits with the maternal and paternal grandmothers.

At the February 16, 2018, 12-month review hearing, Mother and Father were both present. The court terminated reunification services and set the matter for a section 366.26 hearing.

In October 2019, CFS recommended that a section 366.26 hearing be set to establish a legal guardianship for S.J. and her siblings. CFS reported that ICWA did not apply. S.J.'s siblings J.J. and K.J. were placed together in the home of Mr. and Mrs. B., while S.J. was placed in the home of her maternal aunt J.W. and her husband (Mr. and Mrs. W.).

CFS reported that ICWA did not apply. At the October 16, 2019, section 366.26 hearing, neither Mother nor Father were present. As services were still pending for the children, the court continued the hearing to April 9, 2020. Due to the pandemic, the matter was ultimately continued to June 18, 2020.

At the continued June 18, 2020, section 366.26 hearing, the court adopted CFS's recommendation, established legal guardianship for S.J., dismissed the petition, and terminated its jurisdiction.

On March 21, 2022, Father filed a section 388 petition seeking to have S.J. returned to his care. The court set a hearing to determine whether to grant a full evidentiary hearing and ordered CFS to respond to Father's petition. CFS recommended Father's section 388 petition be denied.

At the hearing on the petition, both Mother and Father were present. Following argument, the juvenile court denied Father's section 388 petition.

6

On April 28, 2022, CFS filed a section 388 petition seeking to have the court set a section 366.26 hearing to establish a permanent plan of adoption for S.J. with her relative caregivers, Mr. and Mrs. W.

At the June 6, 2022, hearing on CFS's petition, neither parent was present. The court granted the petition and set the matter for a section 366.26.

On June 15, 2022, CFS contacted Mother to notice Mother of the section 366.26 hearing, as well as to inquire regarding ICWA. Mother reported that she "thinks" her grandmother, S.J.'s maternal great-grandmother, who was deceased, was a member of the Blackfeet Tribe but could provide no further information. Mother could not provide any further information about the inquiry and did not provide any information when the social worker asked if Mother herself was a member of a tribe. The social worker inquired of other relatives who may have additional information. Mother indicated that she would contact her aunt and uncle and provide any further information to the social worker. When the social worker followed up with Mother, she stated that she was not a member of a tribe and noted that she was unable to obtain any additional information about her grandmother. Father continued to deny having any Native American ancestry.

At an ICWA notice review hearing on July 25, 2022, the juvenile court ordered CFS to informally notice the Blackfeet Tribe.

On November 2, 2022, CFS sent a letter to the Blackfeet Tribe providing information regarding the parents and S.J. and to verify whether the child had any Native

American heritage.  CFS noted that the Blackfeet Tribe did not accept email or phone calls regarding ICWA inquiry.

At another ICWA notice review hearing held November 16, 2022, CFS's counsel acknowledged that another ICWA inquiry letter needed to be sent to the Blackfeet Tribe with certified mail receipt and to include the name of the maternal great-grandmother R.G.  The juvenile court ordered CFS to conduct a new ICWA informal notice with the Blackfeet Tribe and to include the names of both maternal and paternal relatives, including S.J.'s grandparents and great-grandparents in the informal notice.

On November 30, 2022, CFS reported that the social worker had reached out to S.J.'s legal guardian (maternal aunt J.W.).  The maternal aunt was unaware of any Native American ancestry in the family and did not know the names or dates of birth for S.J.'s paternal and maternal grandparents or great-grandparents.  The maternal aunt also did not have any contact information for any extended family.  Mother was unable to provide further information about the inquiry.  Further attempts to contact Father about ICWA were unsuccessful.

On November 2, 2022, CFS sent an informal notice letter to the Blackfeet Tribe. The Blackfeet Tribe sent a letter on February 13, 2023, indicating the child was not a member of the tribe.  CFS noted the response letter from the Blackfeet Tribe consisting of one page was attached to its April 20, 2023, additional information to the court report (additional report).[4]

---

[4] The record does not include the response letter from the Blackfeet Tribe.

The contested section 366.26 hearing was held on May 15, 2023. Neither Mother nor Father were present in court. The juvenile court found that ICWA did not apply, and when the court asked whether there were any objections concerning the finding, all the parties stated, "No." The court thereafter found S.J. to be both generally and specifically adoptable and terminated parental rights. The parents timely appealed.

III.

DISCUSSION

Mother and Father contend CFS failed to comply with its duty of inquiry with respect to ICWA because the record does not reflect that inquiry was undertaken of the paternal grandmother and paternal aunt and that there was insufficient evidence in the record to support the juvenile court's finding ICWA did not apply. CFS concedes the record does not reflect that inquiry was undertaken of the paternal grandmother and paternal aunt but argues there was no need for such an expanded inquiry under section 224.2, subdivision (b), of Father's relatives, and any error in failing to interview the paternal grandmother and aunt was harmless. As to Mother's claims, CFS asserts that it had satisfied its duty of inquiry. We find that the expanded inquiry of Father's relatives was unnecessary in this case and that substantial evidence supports the juvenile court's finding ICWA does not apply.

A. *Legal Background*

Congress enacted ICWA "'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of

9

minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.'" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7-8; see 25 U.S.C. § 1902.) Both ICWA and state law define an "'Indian child'" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a) [adopting federal definition].)

"ICWA . . . establish[es] minimum federal standards that a state court must follow before removing [Indian children] from [their] famil[ies]." (*In re T.G.* (2020) 58 Cal.App.5th 275, 287; see, e.g., 25 C.F.R. § 23.107 (2023); § 224.2; Cal. Rules of Court, rule 5.481.) California law implementing ICWA also imposes requirements to protect the rights of Indian children, their families, and their tribes. (See §§ 224-224.6; *In re Abbigail A.* (2016) 1 Cal.5th 83, 91 ["persistent noncompliance with ICWA led the Legislature in 2006 to 'incorporate[ ] ICWA's requirements into California statutory law'"].)

"'""Federal regulations implementing ICWA . . . require that state courts "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child." [Citation.] The court must also "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."'"' [Citations.] 'State law, however, more broadly imposes on social services

10

agencies and juvenile courts (but not parents) an "affirmative and continuing duty to inquire" whether a child in the dependency proceeding "is or may be an Indian child."'" (*In re J.C.* (2022) 77 Cal.App.5th 70, 77 (*J.C.*).)

Under California law, the juvenile court and county child welfare department have "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition may be an Indian child.  (§ 224.2, subd. (a); see *In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*); *In re Ricky R.* (2022) 82 Cal.App.5th 671, 678.)  "This continuing duty can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*D.F.*, at p. 566.)  As to Mother, this case arguably does concern the duty of further inquiry, which arises only if the court or the department has "reason to believe that an Indian child is involved" (§ 224.2, subd. (e)). This case does not involve the duty to provide formal ICWA notice, which occurs only if the court or the department has reason to know that an Indian child is involved (25 C.F.R. § 23.107(c)(1)-(6) (2023); § 224.2, subd. (d)(1)-(6)).

The duty of initial inquiry begins with the initial contact when CFS must ask "the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).)  Part of the initial inquiry also includes requiring each party to complete an ICWA-020 Parental Notification of Indian Status form.  (Cal. Rules of Court, rule 5.481(a)(2)(C).)  Once a child is taken into temporary custody, CFS must ask the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is or may be an Indian child.

11

(§ 224.2, subd. (b).) Specifically, section 224.2, subdivision (b), provides that, "[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306," CFS's obligation includes asking the "extended family members" about the child's Indian status. Thus, the duty of initial inquiry requires CFS to ask extended family members, which include uncles, aunts, cousins, and grandparents, about the possible Indian status of a child only if CFS has taken that child into temporary custody pursuant to section 306. (*In re Robert F.* (2023) 90 Cal.App.5th 492, 497 (*Robert F.*), review granted July 26, 2023, S279743; *In re Ja.O.* (2023) 91 Cal.App.5th 672, 677-678 (*Ja.O.*), review granted July 26, 2023, S280572; *In re Adrian L.* (2022) 86 Cal.App.5th 342, 357-358 (conc. opn. of Kelley, J.) (*Adrian L.*); *In re Andres R.* (2023) 94 Cal.App.5th 828 (*Andres R.*), review granted Nov. 15, 2023, S282054; see *In re Darian R.* (2022) 75 Cal.App.5th 502, 507; 25 U.S.C. § 1903(2).)

Section 306 permits a social worker to take a child into temporary custody "without a warrant" in emergency situations, namely, when "the social worker has reasonable cause to believe that the child has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety." (§ 306, subd. (a)(2).) Peace officers may also take children into temporary custody without a warrant when similar exigent circumstances exist (§§ 305, 305.6, subd. (a)), and section 306 also permits the social worker to take temporary custody of a child "who has been delivered by a peace officer." (§ 306, subd. (a)(1).)

12

By contrast, section 340 provides for the issuance of protective custody warrants, and on a weaker showing than is required for a warrantless detention under section 306. (§ 340, subd. (b)(2); *Robert F.*, *supra*, 90 Cal.App.5th at p. 501; *Ja.O.*, *supra*, 91 Cal.App.5th at p. 678; *Adrian L.*, *supra*, 86 Cal.App.5th at p. 357 (conc. opn. of Kelley, J.).) Specifically, section 340 authorizes the juvenile court to issue protective custody warrants when a section 300 petition has been filed and "the circumstances of [the minor's] home environment may endanger the health, person, or welfare of the minor, or whenever a dependent minor has run away from his or her court-ordered placement." (§ 340, subd. (a).) A court may also issue a protective custody warrant without a section 300 petition. (§ 340, subd. (b).) "[S]ection 340 requires neither imminent danger nor the threat of physical harm for the court to issue a warrant." (*Robert F.*, at p. 501.)

The language of section 224.2, subdivision (b), is clear. It plainly states: "If a child is placed into the temporary custody of a county welfare department *pursuant to Section 306* . . . the county welfare department . . . has a duty to inquire whether that child is an Indian child." (§ 224, subd. (b), italics added.) As we explained in detail in *Robert F.*, the legislative history supports the view that the Legislature intended to apply section 224.2, subdivision (b), narrowly. (See *Robert F.*, *supra*, 90 Cal.App.5th at pp. 500-504.) "The Legislature intended to impose a duty to question extended family members if the child was placed into the county welfare department's temporary custody under section 306." (*Id.* at p. 500.)

13

If the initial inquiry gives the juvenile court or social worker a "reason to believe that an Indian child is involved in a proceeding," then the court or social worker must "make further inquiry regarding the possible Indian status of the child." (§ 224.2, subd. (e).) This further inquiry includes, but is not limited to: "(1) interviewing the parents and extended family members to gather [the] . . . information [required to include in notices sent under section 224.3]; (2) contacting the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying the tribes in which the child may be a member or eligible for membership in; and (3) contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership or eligibility." (*D.F.*, *supra*, 55 Cal.App.5th at pp. 566-567, fn. omitted; § 224.2, subd. (e)(2)(A)-(C); Cal. Rules of Court, rule 5.481(a)(4).) Contact with a tribe must include, at a minimum, "telephone, facsimile, or electronic mail contact to each tribe's designated agent" and include information "necessary for the tribe to make a membership or eligibility determination." (§ 224.2, subd. (e)(2)(C).) There is "reason to believe" a child involved in a proceeding is an Indian child whenever the court or social worker "has information *suggesting* that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1), amended by Stats. 2020, ch. 104, § 15, effective Sept. 18, 2020, italics added.)

""""If the court makes a finding that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA]

14

does not apply to the proceedings, subject to reversal based on sufficiency of the evidence.""'" (*J.C.*, *supra*, 77 Cal.App.5th at p. 78.) A juvenile court finding that ICWA is inapplicable generally implies that the department and court have fulfilled their duty to inquire. (See *In re Austin J.* (2020) 47 Cal.App.5th 870, 885 (*Austin J.*) [a finding that "ICWA does not apply" implies social workers and court "did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry"].) We generally review ICWA findings for substantial evidence, but "where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051 (*D.S.*); see *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004-1005 [reviewing juvenile court's finding that it had no reason to know a child is an Indian child for substantial evidence but reviewing decision that ICWA inquiry was adequate for abuse of discretion].)

B. *Father's Claim of Initial ICWA Error*

In this case, S.J. was taken into protective custody pursuant to a warrant under section 340, so she was not taken into temporary custody pursuant to section 306. The expanded duty of initial inquiry under subdivision (b) of section 224.2 therefore does not apply. The parents' argument that CFS failed to discharge its duty of initial inquiry as to extended paternal family members consequently lacks merit.

Our interpretation of section 224.2 does not exclude children removed pursuant to warrants from ICWA inquiry. Rather, it excludes such children from the *expanded* duty of initial inquiry under subdivision (b) of section 224.2. Such children are still subject to

15

the duty of initial inquiry under subdivisions (a) and (c) of section 224.2. They are also subject to the duty of further inquiry under subdivision (e) of section 224.2 if there is reason to believe they are Indian children. Our interpretation of the statute merely limits the expanded duty of initial inquiry under subdivision (b) of section 224.2 to the children to whom the Legislature said it applies, in keeping with relevant federal guidelines. (*Robert F*., *supra*, 90 Cal.App.5th at pp. 502-503; *Ja.O*., *supra*, 91 Cal.App.5th at pp. 680-681.)

We acknowledge that another panel of this court has declined to follow *Robert F.* (*In re Delila D.* (2023) 93 Cal.App.5th 953 (*Delila D*.), review granted Sept. 27, 2023, S281447), and the California Supreme Court has granted review to decide the issue. Father urges us to follow *Delila D*. For the reasons recently explained in *Andres R*., *supra*, 94 Cal.App.5th 828, we continue to agree with *Robert F*. and *Ja.O*., and we are not persuaded by the criticisms of *Robert F*. that were expressed in *Delila D*. (The majority opinion in *Delila D*. never cites *Ja.O*. and does not address its analysis.)

For all the foregoing reasons, CFS had no duty to conduct an expanded inquiry of the paternal grandmother and paternal aunt.

C. *Mother's ICWA Claims*

Mother argues that there was insufficient evidence in the record to support the juvenile court's finding ICWA did not apply because the social worker failed to file the February 13, 2023, response letter from the Blackfeet Tribe and the court, CFS and trial counsels failed to verify if the letter was attached to the social worker's April 2023

16

additional report to the court. Mother believes the matter should be remanded with directions to CFS to fully comply with section 224.2, subdivision (e).

As noted previously, "where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051; accord, *In re A.M.* (2020) 47 Cal.App.5th 303, 314 (*A.M.*); *D.F.*, *supra*, 55 Cal.App.5th at p. 565.) "However, 'we review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.' [Citations.]" (*D.F.*, at p. 565, quoting *A.M.*, at p. 314 & *Austin J.*, *supra*, 47 Cal.App.5th at p. 885.) In this case, Mother has the burden to show the evidence was not sufficient to support the ICWA finding. (*Austin J.*, at p. 885.)

As discussed *ante*, pursuant to section 224.2, subdivision (e), when CFS has a "reason to believe," it has three requirements: contacting the extended family, contacting the Bureau of Indian Affairs, and contacting the relevant tribes. Here, CFS interviewed Mother, the maternal aunt, and continued to inquire of Mother to obtain additional relative information, in accordance with section 224.2, subdivision (e)(1). Mother could not provide additional relatives for CFS to contact to inquire further as to her belief the maternal great-grandmother had Blackfeet heritage. Mother denied membership in a tribe. The maternal aunt denied any knowledge of Native American ancestry in the

17

family and could not provide additional information regarding S.J.'s ancestry. Mother's sibling is among those "extended family members" whom CFS interviewed in gathering information to determine whether the proceeding involves an Indian child. (See Cal. Rules of Court, rule 5.481(a)(4)(A); 25 U.S.C. § 1903(2).)

Once Mother stated that she thought she had Blackfeet heritage through maternal great-grandmother R.G., CFS contacted Mother and the maternal aunt to gather additional information and then sent two informal notices to the Blackfeet Tribe. According to the social worker, the Blackfeet Tribe responded in February 2013 and indicated S.J. was not a member of the tribe. Although the social worker erred in failing to attach the response letter to the April 2023 additional report to the court,[5] based on the record before us, we find CFS made a good faith effort to gather information about S.J.'s membership status or eligibility. In addition, no party objected to the juvenile court's finding that ICWA did not apply at the May 15, 2023, hearing, or object that the letter was not attached to the social worker's additional report to the court. A social worker's report is generally competent and admissible proof in a dependency proceeding. (See *In re Jonique W.* (1994) 26 Cal.App.4th 685, 698.)

CFS's repeated efforts to gather information concerning S.J.'s maternal ancestry constitute substantial evidence that CFS met its duty of further inquiry. (*D.F.*, *supra*, 55 Cal.App.5th at p. 570.) CFS's further inquiry obligation "is 'not an absolute duty to

---

[5] We acknowledge the record does not include the February 13, 2023, response letter from the Blackfeet Tribe and that the social worker had failed to attach the letter to the April 2023 additional report to the court.

ascertain or refute Native American ancestry'" but rather a duty to make "a good faith effort to gather information about the [child's tribal] membership status or eligibility." (*Ibid.*; see *In re J.S.* (2021) 62 Cal.App.5th 678, 690; see also *In re K.R.* (2018) 20 Cal.App.5th 701, 709 [duty of inquiry involves making "a meaningful effort to locate and interview extended family members"].)  Thus, the absence of a response letter from the tribe, although helpful for verification purposes, does not per se preclude a finding that CFS fulfilled its duty of further inquiry.  Substantial evidence includes all reasonable inferences that can be drawn from the evidence (*In re R.T.* (2017) 3 Cal.5th 622, 633) and, "[w]e must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them . . . ."  (*A.M.*, *supra*, 47 Cal.App.5th at p. 314.)

IV.

DISPOSITION

The order terminating parental rights as to S.J. is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

I concur:

FIELDS
J.

19

[*In re S.J.*, E081498]

RAPHAEL, J., Dissenting.

I respectfully disagree with the majority opinion's holding (as to father) that the county had "no duty" to inquire of the paternal extended family as to father's daughter S.J.'s Indian heritage because she was removed by warrant, rather than without a warrant. (Maj. opn., *ante*, at p. 16.)

The majority opinion correctly recognizes that a county has that initial duty to inquire if a child is "placed into the temporary custody of a county welfare department pursuant to section 306." (§ 224.2, subd. (b); Maj. opn., *ante*, at p. 13.) The opinion also correctly recognizes that "section 306. . .permits the social worker to take temporary custody of a child 'who has been delivered by a peace officer.' (§ 306, subd. (a)(1).)" (Maj. opn., *ante*, at p. 12.)[1] But the opinion does not quote the portion of section 340 that states that a child removed from a home by a warrant "shall immediately be delivered to the social worker." (§ 340, subd. (c).) At that point, the child—removed by warrant—is in temporary custody of the department, triggering its duty to inquire of extended family about whether the child has Indian heritage.

The majority opinion recognizes that our division's opinion in *In re Delila D.* (2023) 93 Cal.App.5th 953, review granted Sept. 27, 2023, S281447, supports the conclusion described above, contradicting the cases the majority relies on. It does not note that three cases from other divisions have followed *In re Delila D.* (See *In re C.L.*

---

[1] The statutory sections cited all are to the Welfare and Institutions Code.

1

(2023) 96 Cal.App.5th 377; *In re Jerry R.* (2023) 95 Cal.App.5th 388; *In re V.C.* (2023) 95 Cal.App.5th 251.)  It also does not note that the California rules of court require extended family inquiry in *all* cases where, as here, a county is seeking to place the child in foster care or to terminate parental rights.  (Cal. Rules of Court, rule 5.481(a)(1).)

I would follow the statutory language quoted above, *In re Delila D*., and the rule of court.  Because I would hold that the county had a duty to inquire of S.J.'s extended family about whether she had Indian heritage, I respectfully dissent from our affirmance of the order terminating father's parental rights.  I would remand for the inquiry to be completed by contacting S.J.'s extended family.

I agree with the majority that no remand is necessary to remedy mother's claim about the inquiry as to *her* side of the family.  The social worker failed to attach the tribe's letter stating that S.J. is not a member, but the social worker's report describing that response, signed under the penalty of perjury, is sufficient, though not ideal.  (See § 281; *In re M.B.* (2011) 201 Cal.App.4th 1057, 1071 [§ 281 "authorize[s] the admission of a social worker's report—including hearsay in the report—in *any* dependency proceeding"].)  If we were to remand the case for further ICWA inquiry as to the paternal side, I would expect the department to remedy its failure to file a copy of the letter.


RAPHAEL\
J.

2